**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 24-10264-cgb |
| **RIC (Austin), LLC** | § | |
| | § | Chapter 11 (Subchapter V) |
| *Debtor*. | § | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTOR TO (A) OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING, (B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (C) USE CASH COLLATERAL, AND (D) GRANT ADEQUATE PROTECTION; AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE CHRISTOPHER G. BRADLEY, U.S. BANKRUPTCY JUDGE:

RIC (Austin), LLC (the "Debtor"), the debtor and debtor-in-possession in the above-styled bankruptcy case (the "Bankruptcy Case"), files this motion ("Motion"), seeking entry of a final order, substantially in the form attached hereto as **Exhibit "A"** and incorporated herein by reference for all purposes (the "Proposed Order" or "Final Order") (I) authorizing Debtor to (A) obtain senior secured superpriority post-petition financing; (B) grant liens and superpriority administrative expense status; (C) use cash collateral; and (D) grant adequate protection; and (II) granting related relief as described in more detail herein. In support of this Motion, the Debtor respectfully states as follows:

## I.   PRELIMINARY STATEMENT

1.      The Debtor is the owner and developer of that certain 110 acre property located at 3443 Ed Bluestein Boulevard, Austin, Texas 78721 (the "Property"), and known as the old "Motorola Campus," originally constructed in the early 1970s. Following financial difficulties and a spinoff of Motorola's semiconductor business, the Motorola Campus was largely abandoned and

subsequently became the subject of a prior bankruptcy case through which the Debtor ultimately became the owner and developer of the Property.[1]

2.       The Debtor continues to conduct maintenance, repair, management and developmental activities and operations at and in connection with the Property. However, formal construction and renovation has ceased as a result of disputes precipitating the Involuntary Petition to which the Debtor has consented in order to establish this Bankruptcy Case as a forum to facilitate the resolution of such disputes.

3.       The Debtor does not have sufficient available sources of capital and financing to carry on its operations and to preserve and protect its assets without the DIP Loan (defined below) and the use of Cash Collateral (defined below). The preservation, maintenance an enhancement of the value of the estate's assets are of the utmost significance and importance to the Debtor and all creditors and stakeholders in and of the estate. Among other things, entry of the Final Order will minimize disruption of the Debtor's operations, finance the administration of this Bankruptcy Case and enable and increase the prospects of an effective reorganization of the Debtor, and is in the best interests of the Debtor, its creditors, and other parties-in-interest.

4.       The post-petition financing proposed by this Motion is a simple continuation of, and proposal for additional advances made pursuant to, the Debtor's senior secured prepetition credit facility, with post-petition liens over the same property as existent and enforceable as of the Petition Date (in addition to customary, proposed superpriority claims).  No priming nor post-petition lien on previously unencumbered assets is proposed.  The DIP Lender (defined below) has agreed to extend credit to the Debtor and to allow the Debtor to use the Prepetition Collateral and DIP Collateral (defined below) upon the terms and conditions set forth in the Final Order.

---

[1]     That prior case was *In re: 3443 Zen Garden, LP*, Case No. 20-10410-HCM (Bankr. W.D. Tex.).

## II.  <u>JURISDICTION & VENUE</u>

5.      The United States Bankruptcy Court for the Western District of Texas ("<u>Bankruptcy Court</u>" or this "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) as to which this Court has the authority consistent with the U.S. Constitution to enter a final disposition hereof, as the relief proposed by this Motion arises only under the provisions of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, the "<u>Bankruptcy Code</u>"). The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry of a final order by the Court.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 9013 and 9014, and the Local Bankruptcy Rules for the Western District of Texas (the "<u>Local Rules</u>").

## III.  <u>BACKGROUND</u>

8.      On March 12, 2024 (the "<u>Petition Date</u>"), Panache Development and Construction, Inc. ("<u>Panache</u>") filed its *Involuntary Petition under Chapter 7*, which Panache subsequently amended on April 3, 2024 (the "<u>Involuntary</u> Petition," at ECF No. 5).  On April 29, 2024, the Debtor filed its *Answer to Involuntary Petition* (the "<u>Answer</u>," at ECF No. 13), and also filed its *Motion to Convert Chapter 7 Case to Chapter 11* (the "<u>Motion to Convert</u>," at ECF No. 14).  On September 9, 2024 (the "<u>Relief Date</u>"), the Court entered its *Agreed Order for Relief under Subchapter V of Chapter 11 of Title 11 of the United States Code* (the "<u>Order for Relief,</u>" at ECF No. 28), granting relief against the Debtor under Chapter 11, Subchapter V, of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  On and after the Relief Date, the Debtor has

3

operated its business and managed its property as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner, nor committee of unsecured creditors or any other statutory committee, has been appointed in the Case.

**A.      Prepetition Indebtedness: The First Loan and Lien**

9.      Pursuant to that certain Loan Agreement dated December 2, 2020 (as amended, modified, or supplemented, the "First Loan Agreement"), executed by the Debtor, as borrower, and Romspen Mortgage Limited Partnership, as lender (the "Prepetition Lender"), the Prepetition Lender provided the Debtor a loan in the original principal amount of up to $125,000,000 (the "First Loan") (the First Loan Agreement and all other documents evidencing, securing, or otherwise related to the First Loan are referred to, collectively, as the "First Loan Documents").[2]

10.      As of the Petition Date, the aggregate amount due and owing under the First Loan and the First Loan Documents was not less than $114,185,038.21 (such amount, together with all other amounts incurred or accrued under the First Loan Documents, the "First Loan Obligations").

11.      Repayment of the First Loan Obligations is secured by, *inter alia*, (a) a first priority, duly perfected lien on and security interest in (the "First Loan Liens") all real property, fixtures, and other assets identified in that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 2, 2020, and recorded with Travis County, Texas County Clerk on December 8, 2020 (collectively, the "First Loan Collateral"), and (b) a duly

---

[2]      The First Loan Documents are attached hereto as:

Exhibit B-1 — the *Loan Agreement* between the Debtor and RMLP — Dated: December 2, 2020

Exhibit B-2 — the *Promissory Note* in the amount of U.S. $125,000,000.00 — Dated: December 2, 2020

Exhibit B-3 — the *Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing* — Dated: December 8, 2020

Exhibit B-4 — the *Amended and Restated Promissory Note* — Dated: December 2, 2020

perfected lien on and security interest in the Second Loan Collateral (defined below) granted by the Debtor to the Prepetition Lender pursuant to the Second Loan Liens (defined below).

**B.**     **Prepetition Indebtedness: The Second Loan and Lien**

12.     Pursuant to that certain Conditional Assumption of Promissory Note dated December 2, 2020 (as amended, modified, or supplemented, the "Note Assumption Agreement"), Debtor conditionally assumed that certain loan in the original principal amount of up to $125,000,000 evidenced by that certain Promissory Note dated April 27, 2018, executed by 3443 Zen Garden Limited Partners in favor of Prepetition Lender (the "Second Loan" and, together with the First Loan, the "Prepetition Loans") (the Note Assumption Agreement and all other documents evidencing, securing, or otherwise related to the Second Loan are referred to, collectively, as the "Second Loan Documents" and, together with the First Loan Documents, the "Prepetition Loan Documents").[3]

13.     As of the Petition Date, the aggregate amount due and owing under the Second Loan and the Second Loan Documents was not less than $99,665,917.44 (such amount, together with all other amounts incurred or accrued under the Second Loan Documents, the "Second Loan Obligations" and, together with the First Loan Obligations, the "Prepetition Obligations").

14.     Repayment of the Second Loan Obligations is secured by, *inter alia*, (a) a duly perfected lien on and security interest in the First Loan Collateral granted by the Debtor to the Prepetition Lender pursuant the First Loan Liens, and (b) a duly perfected lien on and security

---

[3]     The Second Loan Documents are attached hereto as:

    Exhibit C-1 — the *Conditional Assumption of Promissory Note* between RMLP and the Debtor — Dated: December 2, 2020

    Exhibit C-2 — the *Loan Agreement* between 3443 Zen Garden Ltd. P'ship and RMLP — Dated: April 27, 2018

    Exhibit C-3 — the *Promissory Note* in the amount of U.S. $125,000,000.00 — Dated: April 2018.

interest in (the "Second Loan Liens" and, together with the First Loan Liens, the "Prepetition Liens") all real property, fixtures, and other assets identified in that certain Subordinate Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 6, 2023, and recorded with Travis County, Texas County Clerk on June 13, 2023 (collectively, the "Second Loan Collateral" and, together with the First Loan Collateral, the "Prepetition Collateral").[4]

15.     Subject to the "Challenge" process and "Challenge Period" set forth below and in the Proposed Order and other than to the extent they provide for a prepetition lien on personal property that is subject to perfection as provided in Chapter 9 of Title 1 of the Texas Business and Commerce Code and enforceable as of the Petition Date, the Debtor acknowledges and agrees that, as of the Petition Date: (a) the Prepetition Obligations constitute legal, valid, enforceable, non-avoidable and binding obligations of the Debtor; (b) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist; (c) no portion of the Prepetition Liens on any Prepetition Collateral or the Prepetition Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Prepetition Loan Documents are valid and enforceable by the Prepetition Lender against the Debtor; (e) the Prepetition Liens as to Prepetition Collateral (1) were fully perfected as of the Petition Date, (2) constitute legal, valid, binding, enforceable, non-avoidable and properly perfected security interests in and liens on the Prepetition Collateral, and (3) were granted to, or for the benefit of, the Prepetition Lender for fair consideration and reasonably equivalent value; (f) the Debtor and its estate have no valid claim, objection, challenge or cause of action against the Prepetition Lender or any of its successors,

---

[4]     The *Subordinate Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing* file-stamped June 13, 2023, is attached hereto as Exhibit D.

assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to Sections 105, 510 or 542 through 553 of the Bankruptcy Code or applicable state law equivalents), arising out of, based upon, related to, or connected with any of the Prepetition Loan Documents (or the transactions contemplated thereunder), the Prepetition Obligations, the Prepetition Collateral, or the Prepetition Liens; and (g) the Debtor waives, discharges, and releases any right to challenge the Prepetition Loan Documents (or the transactions contemplated thereunder), the Prepetition Obligations (or the priority of the Debtor's obligations thereunder), the Prepetition Lender's rights or claims with respect to the Prepetition Collateral, or the Prepetition Liens on Prepetition Collateral or the Prepetition Loans in any respect.

## C.     The Debtor's Need for Post-Petition Financing

16.     The Debtor and its estate immediately need to use the proceeds from the DIP Loan to, among other things, finance the administration of the Bankruptcy Case, ensure sufficient liquidity to preserve the Property and other property of the estate, as well as to pay actual, necessary, ordinary course operating expenses, as set forth in the approved Initial Budget at Exhibit A-2.[5]

17.     Absent the DIP Loan, which will provide assurances that the Debtor will have sufficient liquidity to administer this chapter 11, subchapter V Bankruptcy Case, the value of the Debtor's estate would be significantly impaired to the detriment of all stakeholders. Without

---

[5]     To be supplemented.

postpetition financing, the Debtor lacks sufficient available sources of working capital and financing to carry on its business operations and to maintain, preserve and protect the estate's assets. The Debtor has carefully evaluated its operations, including determining potential liquidity needs for this case. As part of that analysis, the Debtor and its advisors have analyzed the Debtor's financial projections and liquidity position, and considered the adverse market conditions facing the Debtor. In light of the Debtor's lack of liquidity, the Debtor's advisors assisted the Debtor in identifying, investigating, evaluating and exploring potential financing and strategic alternatives. Based on this work, the Debtor determined, in consultation with its advisors, that procuring sufficient financing is essential to meet operational expenses and fund this Case and that no other remotely sufficient financing is available to the Debtor on an unsecured basis or on terms and conditions more favorable than the proposed DIP Loan (as defined herein).

## IV.    RELIEF REQUESTED

18.    By this Motion, the Debtor seeks entry of the Proposed Order following a hearing to consider the Motion (the "Final Hearing"):

a.    authorizing the Debtor to (A) obtain postpetition secured debtor in possession financing in an aggregate principal amount of up to $[5,000,000] (the "DIP Loan"), pursuant to one or more DIP Loan Advances (as defined herein) made by Romspen Mortgage Limited Partnership (the "DIP Lender") to Debtor in accordance with the terms and conditions contained in the First Loan Agreement (as defined herein), as amended by that certain First Amendment to Loan Agreement (substantially in the form attached hereto as **Exhibit A-1** and incorporated herein by reference for all purposes, and as hereafter amended, restated, supplemented, waived, or otherwise modified from time to time, all in accordance with, and subject to, the terms of this Final Order, the "DIP Loan Amendment"), secured by the DIP Liens on the DIP Collateral (each as defined herein), and (B) incur all indebtedness (as defined in the First Loan Agreement) in respect of the DIP Loan, including the DIP Loan Advances and other amounts payable to the DIP Lender under the DIP Loan Documents and the Final Order (the "DIP Obligations") (the First Loan Agreement, as amended by the DIP Loan Amendment, the Final Order, and each of the Prepetition Loan Documents (as defined herein) that evidences, secures, or relates to the DIP Loan, each

as amended, restated, supplemented, waived, or otherwise modified from time to time, all in accordance with, and subject to, the terms of the Final Order, are referred to collectively as the "DIP Loan Documents");

b.     authorizing the Debtor to execute and deliver the DIP Loan Amendment and any other DIP Loan Documents (and any amendments, supplements, or modifications thereto) and to perform all of its obligations thereunder and such other and further acts as may be necessary or desirable in connection with the DIP Loan Documents;

c.     granting allowed superpriority administrative expense claims pursuant to Section 364(c)(1) of the Bankruptcy Code for all DIP Obligations, as more fully set forth herein and in the Proposed Order;

d.     authorizing the Debtor to use all property constituting "cash collateral" proceeds of the DIP Collateral (including proceeds of interests in collateral granted by the Final Order, and as defined in Section 363(a) of the bankruptcy Code, "Cash Collateral") as provided in the Final Order, and the provision of adequate protection for any Diminution in Value (As defined in the Proposed Order) of interest in the Prepetition Collateral; and

e.     modifying the automatic stay imposed under Section 362 of the Bankruptcy Code, to the extent necessary, to implement and effectuate the terms and provisions of the DIP Loan Documents and the Final Order, Ex. A.

**A.    Concise Statement Pursuant to Bankruptcy Rule 4001**

19.    The below chart comprises a summary of the material terms of the proposed DIP Loan, together with references to the applicable sections of the relevant source documents, as required by Bankruptcy Rules 4001(b)(1)(B) and 4001(c)(1)(B).[6] Nothing in this summary of material terms should or shall be construed as a modification of the specific terms contained within either the proposed Final Order or the DIP Loan Amendment. Parties are encouraged to read the specific provisions referenced herein.

| Applicable Rule | Summary of Material Terms |
|---|---|
| **Borrower**<br><br>Bankruptcy Rule 4001(c)(1)(B) | RIC (Austin), LLC |

---

[6] Capitalized terms used in the following summary chart but not otherwise defined have the meanings ascribed to them in the DIP Loan Amendment or the Final Order, as applicable.

| Applicable Rule | Summary of Material Terms |
|---|---|
| **DIP Lender**<br><br>Bankruptcy Rule 4001(c)(1)(B) | Romspen Mortgage Limited Partnership |
| **Term**<br><br>Bankruptcy Rule 4001(b)(l)(B)(iii), 4001(c)(1)(B) | Matures at the earliest of (a) December 31, 2027, or (b) the date of acceleration of the DIP Loan pursuant to the DIP Loan Amendment.<br><br>*See* Ex. A-1, DIP Loan Amendment, p. 4. |
| **Conditions of Borrowing**<br><br>Bankruptcy Rule 4001(c)(1)(B) | The DIP Loan includes customary conditions of borrowing, the satisfaction of which are a condition precedent to the obligations of the DIP Lender to make the DIP loans.<br><br>*See* Ex. A-1, DIP Loan Amendment, p. 8-9 |
| **Interest Rates**<br><br>Bankruptcy Rule 4001(c)(1)(B) | Rate: ten percent (10%) per annum, fixed; provided, however, that following the occurrence and continuation of a DIP Loan Default or the DIP Loan Maturity Date, the unpaid principal amount of the DIP Loan shall bear interest at a rate equal to two percent (2.0%) plus the otherwise applicable rate.<br><br>*See* Ex. A-1, DIP Loan Amendment, p. 8. |
| **Use of DIP Loan and Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii), (c)(1)(B) | Proceeds of the DIP Loan and Cash Collateral shall be used solely in accordance with the Budget Requirements, the DIP Loan Documents, and the Final Order<br><br>*See* Ex. A, Final Order, § H, pgs. 8–9. |
| **Adequate Protection**<br><br>Bankruptcy Rules 4001(b)(l)(B)(iv), 4001(c)(1)(B)(ii) | The Prepetition Lender is entitled to receive adequate protection pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code for any diminution in the value of its interest in the Prepetition Collateral resulting from, arising from, or attributable to, among other things, (i) the Debtor's use, sale, or lease of the Prepetition Collateral, including without limitation, Cash Collateral, (ii) the granting of liens under Section 364 of the Bankruptcy Code, (iii) the market value decline of the Prepetition Collateral, and (iv) the subordination of the Prepetition Liens on Prepetition Collateral to the Carve-Out.<br><br>*See* Ex. A, Final Order, §§ I, 14. |
| **Budget**<br><br>Bankruptcy Rule 4001 (c)(1)(B) | *See* Ex. A, Final Order, §§ 7(a)–(d); Ex. A-2, Initial Budget. |
| **Variance Covenant/Reporting**<br><br>Bankruptcy Rule 4001(c)(l)(B) | The Debtor shall deliver to the DIP Lender the Variance Report (as defined in the DIP Loan Amendment) on a bi-weekly basis (or at reasonable request) in accordance with the terms and on the dates set forth in the DIP Loan Amendment.  From time to time upon reasonable request of the DIP Lender, the Debtor and its advisors shall participate in status calls with the DIP Lender and its professionals and advisors to discuss the Debtor's operations and finances and such other matters relating to the Debtor as the DIP Lender (or its agents or advisors) shall reasonably request.<br><br>*See* Ex. A, Final Order, § 7(d). |

| Applicable Rule | Summary of Material Terms |
|---|---|
| **Events of Default**<br><br>Bankruptcy Rule 4001(c)(l)(B) | *See* Ex. A-1, DIP Loan Amendment, pgs. 11-14. |
| **Waiver/Modification of Applicability of Nonbankruptcy Law Relating to Perfection or Enforceability of Liens**<br><br>Bankruptcy Rule 4001(c)(1)(B)(vii) | The Proposed Order provides for a customary waiver/modification of applicability of nonbankruptcy law to the perfection or enforcement of liens.<br><br>*See* Ex. A, Final Order, §§ 3, 18(b). |
| **Indemnification**<br><br>Bankruptcy Rule 4001(c)(1)(B)(ix) | The indemnification and expense reimbursement provisions are ordinary and customary for financings of this type.<br><br>*See* Ex. A, Final Order § 10; Ex. A-1, DIP Loan Amendment, pgs. 14-15. |
| **Entities with Interests in Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(l)(B)(i) | Rompsen Mortgage Limited Partnership |
| **Carve-Out**<br><br>Bankruptcy Rule 4001(c)(1)(B) | There is a "Carve-Out" of certain statutory fees and allowed professional fees of the Debtor, as more specifically set forth in the Final Order and DIP Loan Amendment.<br><br>*See* Ex. A, Final Order, § 16; Ex. A-1, DIP Loan Amendment, pgs. 2-3. |
| **Fees**<br><br>Bankruptcy Rule 4001(c)(1)(B) | The Debtor has agreed, subject to Court approval, to pay certain fees to the DIP Lender in exchange for providing the DIP Loan.<br><br>*See* Ex. A, Final Order, § 9; Ex. A-1, DIP Loan Amendment, pgs. 5, 14. |
| **506(c) Waiver**<br><br>Bankruptcy Rule 4001(c)(l)(B)(x) | No marshaling (or any similar doctrine) with respect to the DIP Collateral, and waiver of all section 506(c) claims.<br><br>*See* Ex. A, Final Order, §§ G, 19. |
| **Section 552(b)**<br><br>Bankruptcy Rule 4001(c)(l)(B) | No marshaling (or any similar doctrine) with respect to the DIP Collateral, and waiver of all section 506(c) claims.<br><br>*See* Ex. A, Final Order, §§ G, 20. |
| **Stipulations to Prepetition Liens and Claims**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iii) | The Final Order shall contain certain stipulations by the Debtor as to, *inter alia*, the enforceability of the Prepetition Senior Secured Debt, and the validity, priority and perfection of all liens securing the Prepetition Senior Secured Debt as of the Petition Date pursuant to recorded deeds of trust.<br><br>*See* Ex. A, Final Order, §§ D, 18. |

| Applicable Rule | Summary of Material Terms |
|---|---|
| **Liens and Priorities**<br><br>Bankruptcy Rule 4001(c)(1)(B)(i) | *See* Ex. A, Final Order, §§ 11–13. |
| **Liens on Avoidance Actions**<br><br>Bankruptcy Rule 4001(c)(1)(B)(i), (xi) | N/A |
| **Waiver/Modification of the Automatic Stay**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iv) | The automatic stay is modified on a limited basis as necessary to effectuate all of the terms, rights, benefits, privileges, remedies and provisions of the Final Order and the DIP Loan Documents.<br><br>*See* Ex. A, Final Order, § 26. |
| **Challenge Period**<br><br>Bankruptcy Rule 4001(c)(l)(B) | Sixty (60) days following entry of the Final Order.<br><br>*See* Ex. A, Final Order, § 18. |

## V.    BASIS FOR RELIEF: ARGUMENTS AND AUTHORITIES

### A.    This Court Should Authorize the Debtor to Obtain Postpetition Financing

20.    This Court should authorize the Debtor to enter into the DIP Loan Documents and obtain access to the DIP Loan as an exercise of the Debtor's sound business judgment.

21.    Bankruptcy Code § 364 provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, then the court may authorize the debtor to obtain secured or superpriority financing under certain circumstances. 11 U.S.C. § 364(c). Provided that an agreement to obtain secured credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant debtors considerable deference to act in accordance with their sound business judgment in obtaining credit. *See, e.g., In re ERG Intermediate Holdings, L.L.C.,* Case No. 15-31858 (HDH) (Bankr. N.D. Tex. June 15, 2015) (order approving postpetition financing as an exercise of the debtors' business judgment); *Group of Institutional Investors v. Chicago, Mil., St.*

*P., & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943); *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Bankruptcy Code section 364(c) and (d).); *In re Curlew Valley Assocs.*, 14 B.R. 506, 511—13 (Bankr. D. Utah 1981).

22.     Moreover, the Court may appropriately take into consideration non-economic benefits to the Debtor offered by a proposed postpetition credit facility. For example, in *In re ION Media Networks, Inc.*, the Bankruptcy Court for the Southern District of New York held that:

> Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms.  Relevant features of the financing must be evaluated, including non-economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization.  This is particularly true in a bankruptcy setting where cooperation and established allegiances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan.  That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.

*In re ION Media Networks, Inc.*, Case No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009).

**B.      Entry Into the DIP Loan is a Sound Exercise of the Debtor's Business Judgment**

23.     The Debtor's execution of the DIP Loan Documents is an exercise of its sound business judgment that warrants Court approval. Before the Relief Date, the Debtor and its advisors undertook a detailed investigation as to the Debtor's projected financing needs during the pendency of any chapter 11 case and determined that the Debtor would require substantial postpetition financing to support its operational and restructuring activities. These efforts included, without limitation, efforts to identify, investigate, evaluate and explore potential financing and strategic alternatives, including through its (now) Court-approved financial advisors, HMP Advisory Holdings, LLC d/b/a Harney Partners.  The Debtor has exercised sound business

judgment by seeking advice from its legal and financial advisors in making the determination that the DIP Loan, the DIP Loan Documents, and the proposed Final Order are fair and reasonable and in the best interest of the Debtor's estate based on its conclusion that no other remotely sufficient financing is available to the Debtor or the estate on reasonably equivalent or better terms.

24.     The Debtor ultimately concluded that the DIP Loan represents the best available financing for the Debtor under the circumstances. Given its current financial condition, the Debtor is unable to obtain remotely sufficient committed financing from sources other than the DIP Lender on terms more favorable than under the DIP Loan and the DIP Loan Documents.

25.     The Debtor is not able to obtain remotely sufficient unsecured committed financing allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code. The Debtor also has been unable to obtain sufficient committed financing (a) having priority over administrative expenses of the kind specified in Sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Financing on a postpetition basis is unavailable to the Debtor without providing the DIP Lender: (i) the DIP Liens on the Loan Collateral (each as defined herein), as provided herein and in the DIP Loan Documents with the priorities set forth herein; (ii) the DIP Superpriority Claims (as defined herein); and (iii) the other rights, protections and benefits set forth in the Final Order.

26.     Simply put, due to the amount of the Prepetition Obligations held by Romspen Mortgage Limited Partnership secured by the Prepetition Collateral and relative to the value thereof, the Debtor has insufficient unencumbered assets available to provide the lender adequate

protection in connection with any reasonable priming financing proposal, and no ability to obtain remotely sufficient financing secured by other assets (or on an unsecured basis).

27.     After considering all alternatives, the Debtor has concluded, in the exercise of its sound business judgment, that the DIP Loan represents the best financing available to it at this time and is in the best interests of its estate and creditors. The Debtor believes and has concluded following a reasonable investigation that financing on the same, superior or comparable terms (both monetary and non-monetary) is otherwise unavailable. Accordingly, the Debtor should be granted authority under section 364(d) of the Bankruptcy Code to enter into the DIP Loan Documents and borrow funds from the DIP Lender on the basis described therein.

28.     The Debtor believes that the Court's consideration of non-economic factors, as permitted by *ION Media*, is especially appropriate here. Absent the DIP Lender's willingness and ability to fund the DIP Loan, the Debtor would likely face liquidation. Moreover, it is prohibitively unlikely any third-party lenders would be in a position to provide as certain and favorable a financing arrangement as is currently available under the DIP Loan. The Debtor submits that the certainty and favorable terms afforded by the DIP Loan—as well as the DIP Lender's support of the Debtor's restructuring efforts—provides additional and ample reason to authorize it.

29.     Accordingly, the Debtor determined in its sound business judgment, and after consultation with its advisors, that the DIP Loan provides the necessary amount of financing on more favorable terms than any other reasonably available alternatives. The DIP Loan will provide the Debtor with access to the necessary liquidity, which the Debtor and its advisors have determined should be sufficient to support the Debtor's ongoing operations and activities through the pendency of the chapter 11 case. Thus, the Debtor submits that entering into the DIP Loan

Documents constitutes a sound exercise of the Debtor's business judgment that should be approved by the Court.

**C.**      **The Court Should Approve the Requested Liens and Superpriority Claims**

30.      As used herein, (i) the term "DIP Liens" means the Prepetition Liens as they existed on the Petition Date, which shall continue in full force and effect from and after the Petition Date as security for the DIP Obligations; and (ii) the term "DIP Collateral" means all assets and properties (whether tangible, intangible, real, fixture or other) owned by the Debtor and its estate after the Petition Date that, notwithstanding Section 552(a) of the Bankruptcy Code, would constitute Prepetition Collateral (and expressly excluding claims and causes of action arising under Sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b), or 724(a) of the Bankruptcy Code); provided; however, that no challenge to the validity, extent, priority, enforceability, or perfection of any lien or security interest that constitutes a Prepetition Lien (whether as a result of a Challenge or otherwise) shall affect the validity, extent, priority, enforceability, or perfection of the DIP Liens.

31.      The Debtor proposes to grant the DIP Lender, subject to the Carve Out, DIP Liens on all DIP Collateral as collateral security for the prompt and complete performance and payment when due of the DIP Obligations. *See* Ex. A, §§ 11–13.

32.      The DIP Liens shall constitute continuing, valid, binding, enforceable, non-avoidable, automatically and properly perfected security interests in and liens on in the DIP Collateral as follows:

> a.      The DIP Liens shall constitute valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected first priority liens on and security interests in the DIP Collateral that secure the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration, or otherwise) of the DIP Obligations.;

   b. Except as expressly set forth herein and in the proposed Final Order, the DIP Liens: (i) shall not be or be made junior to or *pari passu* with (A) any lien, security interest or claim heretofore or hereafter granted in the Case or any Successor Case, and shall be valid and enforceable against the Debtor, its estate, any trustee or any other estate representative appointed or elected in the Case or any Successor Case and/or upon the dismissal of any of the Case or the Successor Case, and (B) any lien or interest that is avoided and preserved for the benefit of the Debtor and its estate under Section 551 of the Bankruptcy Code or otherwise; and (ii) shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code.

*Id.* at ¶ 13.

  33. The Debtor also proposes to grant allowed superpriority administrative expense claims pursuant to Section 364(c)(1) of the Bankruptcy Code for the DIP Obligations (the "DIP Superpriority Claims"), senior to and with priority in payment over any and all administrative expense claims, adequate protection and other diminution claims, priority and other unsecured claims, and any other claims against the Debtor or its estate in the Case or any Successor Case, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, the kinds specified in or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to Sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113, and 1114 of the Bankruptcy Code or otherwise, including those resulting from the conversion of the Case pursuant to Section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that the DIP Superpriority Claims shall be subject to the Carve-Out. The DIP Superpriority Claims shall, for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under Section 503(b) of the Bankruptcy Code and shall be payable from and have recourse to all DIP Collateral.

34. The statutory requirement for obtaining postpetition credit under section 364(c) is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained). Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts examine whether:

    a.    the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, i.e., by allowing a lender only an administrative claim;

    b.    the credit transaction is necessary to preserve the assets of the estate; and

    c.    the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders.

*See In re Los Angeles Dodgers LLC*, 457 B.R. 308; *see in re Ames Dep't Stores*, 115 B.R. at 37–40; *see also In re St. Mary Hosp.*, 86 B.R. 393, 401–02 (Bankr. E.D. Pa. 1988); *Crouse Grp.*, 71 B.R. at 549.

35. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). In circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Snowshoe Co.*, 789 F.2d at

1088 (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met).

36.     Here, substantially all of the Debtor's assets are subject to the Prepetition Liens. To the extent that the Debtor and the estate own personal property that is not subject to a perfected and enforceable lien as of the Petition Date, the value of such property is grossly inadequate to secure reasonable alternate financing. Given its current financial condition, the Debtor is unable to obtain sufficient committed financing from sources other than the DIP Lender on terms more favorable than under the DIP Loan and the DIP Loan Documents. The Debtor is not able to obtain unsecured committed financing allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code. The Debtor also has been unable to obtain sufficient committed financing (a) having priority over administrative expenses of the kind specified in Sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to an unavoidable lien, or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Financing on a postpetition basis is unavailable to the Debtor without providing the DIP Lender: (i) the DIP Liens on the DIP Collateral (each as defined herein), as provided herein and in the DIP Loan Documents with the priorities set forth herein; (ii) the DIP Superpriority Claims (as defined herein); and (iii) the other rights, protections and benefits set forth in this Final Order.

37.     Absent the DIP Loan, which will provide assurances that the Debtor will have sufficient liquidity to administer this chapter 11 case, the value of the Debtor's estate would be

significantly impaired to the detriment of all stakeholders. Without postpetition financing, the Debtor lacks sufficient available sources of working capital and financing to carry on its business operations and to maintain preserve and protect its assets while simultaneously paying the projected costs of administering this case. Given the circumstances, the Debtor believes that the terms of the DIP Loan, as set forth herein and in the DIP Loan Documents, are fair, reasonable, and adequate. For all these reasons, the Debtor submits that it has met the standard for obtaining postpetition financing.

**D.      The Court Should Authorize the Debtor to Use Cash Collateral**

38.      Pursuant to 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in the cash collateral consents or if the Court, after notice and hearing, authorizes the use of cash collateral. Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition the Debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

39.      The Prepetition Lender, to the extent implicated, and DIP Lender, has each consented to the Debtor's request to use Cash Collateral as set forth in this Motion, the DIP Loan Documents, and the proposed Final Order, and the Debtor submits that its use Cash Collateral otherwise complies with applicable Bankruptcy Code requirements. Significantly, Bankruptcy Code § 363(c)(2)(A) permits a debtor in possession to use cash collateral with the consent of the secured party. Alternatively, § 363(c)(2)(B) permits the bankruptcy court, after notice and a hearing, to authorize use of cash collateral without consent of so long as the use is consistent with the provisions of Bankruptcy Code § 363, which among other things required adequate protection. 11 U.S.C. § 363(e).  Here, such Cash Collateral is defined and contemplated to flow from the DIP Collateral as opposed to prepetition cash collateral.

40. The concept of adequate protection seeks to protect a secured creditor from diminution in the value of its interest in the particular collateral. *See In re Cont'l Airlines, Inc.*, 146 B.R. 536, 539–40 (Bankr. D. Del. 1992) (secured creditor only entitled to adequate protection to the extent the collateral declined in value); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (if there is no diminution in the value of the secured creditor's collateral and the debtor can operate profitably postpetition, the secured creditor is adequately protected against the use of cash collateral); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the chapter 11 reorganization.").

41. The Bankruptcy Code contains the following non-exhaustive (*see* 11 U.S.C. § 102(3)) list of ways to provide adequate protection:

> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

42. What constitutes sufficient adequate protection is decided on a case-by-case basis. *See In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Monroe Park*, 17 B.R. 934 (D. Del. 1982) (concept of adequate protection requires a debtor to propose some form of relief that will preserve the secured creditor's interest in collateral pending the outcome of the bankruptcy proceedings); *see also Resolution Trust Corp.*

*v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994);

*In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y.

1996); *In re Realty S.W. Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992).

43.     The Debtor's proposed adequate protection is consistent with the requirements of

Bankruptcy Code § 363 and therefore the Debtor's proposed use of Cash Collateral meets the

standard for approval under Bankruptcy Code § 363(c)(2)(B).

44.     As adequate protection of the interests of the Prepetition Lender in the Prepetition

Collateral, the Debtor agrees to grant the Prepetition Lender:

> a.      solely to the extent of the Diminution in Value of the interests of the
> Prepetition Lender in the Prepetition Collateral, from and after the
> Petition Date, continuing, valid, binding, enforceable, non-
> avoidable, and automatically and properly perfected postpetition
> liens on and security interests in the DIP Collateral (the "Adequate
> Protection Liens"), which liens shall be (x) junior to the Carve-Out,
> and (y) *pari passu* with the DIP Liens. The Adequate Protection
> Liens shall be valid and enforceable against the Debtor, its estate
> and any successors thereto, including, without limitation, any trustee
> appointed in the Case or any Successor Case until such time as the
> Prepetition Obligations are paid in full. The Adequate Protection
> Liens shall not be subject to Sections 510, 549 or 550 of the
> Bankruptcy Code. No lien or interest avoided and preserved for the
> benefit of the Debtor's estate pursuant to Section 551 of the
> Bankruptcy Code shall be *pari passu* with or senior to the
> Prepetition Liens or the Adequate Protection Liens;
>
> b.      solely to the extent of the Diminution in Value of the interests of the
> Prepetition Lender in the Prepetition Collateral, from and after the
> Petition Date, allowed superpriority administrative expense claims
> against the Debtor's estate (the "Adequate Protection Superpriority
> Claims"), which claims shall be (x) junior in priority of payment to
> the Carve-Out, (y) *pari passu* with the DIP Superpriority Claims,
> and (y) senior in priority of payment over any and all administrative
> expenses and any other claims against the Debtor or it estate in the
> Case or any Successor Case, at any time existing or arising, of any
> kind or nature whatsoever, including, without limitation, the kinds
> specified in or ordered pursuant to any provision of the Bankruptcy
> Code, including, but not limited to, Sections 105, 326, 328, 330,
> 331, 364, 365, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and
> 1114 of the Bankruptcy Code or otherwise, including those resulting

from the conversion of the Case pursuant to Section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.  Except for the DIP Superpriority Claims and the Carve-Out, the Adequate Protection Superpriority Claims shall not be or be made junior to or any claim heretofore or hereinafter granted or created in the Case or any Successor Case and shall be valid and enforceable against the Debtor, its estate and any successors thereto, including, without limitation, any trustee appointed in the Case or any Successor Case until such time as the Prepetition Obligations are paid in full;

c.      reasonable access to the Debtor's premises, books, records, reports and other papers, to the extent set forth in the Prepetition Loan Documents; and

d.      In the event that any portion of the Prepetition Obligations is ordered by this Court to be reinstated or the proceeds of the repayment thereof are disgorged for reasons other than a successful challenge of the Prepetition Liens or the Prepetition Obligations, for so long as such portion of the Prepetition Obligations remains outstanding, the adequate protection provided for in this Motion shall be reinstated with respect to such outstanding Prepetition Obligations until they are paid in full in cash as if such previous payment or repayment thereof had never occurred.

45.     This proposal is fair and reasonable, and adequately protects the Prepetition Lender's interests in the Prepetition Collateral securing the Debtor's prepetition obligations from diminution during the Bankruptcy Case, including by the Debtor's use of the Cash Collateral pursuant to the terms hereof. The relief is necessary to avoid immediate and irreparable harm to the Debtor's estate because, without the use of Prepetition Collateral and Cash Collateral, the Debtor will not have the funds necessary to orderly administer Bankruptcy Case, whether to reorganize or to sell or otherwise liquidate its assets while simultaneously paying fees and costs of administration and other expenses necessary to maximize the value of the Debtor's estate.  The alternative is a fire sale foreclosure which unquestionably would produce less value to the estate and all of its creditors and stakeholders.

46.     The Debtor's preservation of estate assets through the use of DIP Loan proceeds and Cash Collateral will prevent avoidable diminution of the value of other collateral and enhance the likelihood of increasing or preserving the Debtor's overall value, which serves to provide further "adequate protection" for Bankruptcy Code purposes. *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (noting that, in determining whether protection is "adequate," courts consider "whether the value of the debtor's property will increase as a result of the" use of collateral or provision of financing); *Sky Valley*, 100 B.R. at 114 ("an increase in the value of the collateral . . . resulting from superpriority financing could result in adequate protection." (citation omitted)), *aff'd*, 99 B.R. 117 (N.D. Ga. 1989).

47.     Significantly, the Debtor has received the necessary consents to the Debtor's proposed use of Cash Collateral, on the terms and conditions set forth in the Final Order. Therefore, pursuant to 11 U.S.C. § 363(c)(2), the Debtor's proposed use of Cash Collateral is warranted and should be authorized as set forth in the Final Order.

**E.     The Scope of the Carve Out is Appropriate**

48.     The DIP Obligations are subject to a Carve Out that provides for, *inter alia*, payment of all fees required to be paid to the Clerk of Court and the U.S. Trustee, as well as the unpaid fees and expenses incurred by any professional or professional firm as of the relevant trigger date. *See* Ex. A, § 16. Without the Carve out, the Debtor and other parties in interest may be deprived of certain rights and powers because the services for which professionals may be paid in this chapter 11 case would be restricted. *See In re Ames Dep't Stores*, 115 B.R. at 40 (observing that courts insist on carve outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced."). The Carve Out does not directly or indirectly deprive the Debtor's estate or other

parties in interest of possible rights and powers. Additionally, the Carve Out protects against administrative insolvency during the course of this chapter 11 case by ensuring that assets remain for the payment of the Clerk of the Court, U.S. Trustee fees, and professional fees of the Debtor.

**F.** **The Court Should Authorize the Debtor to Pay the Fees Set Forth in the DIP Loan Amendment**

49.     The Debtor has agreed, subject to Court approval, to customarily pay certain fees to the DIP Lender in exchange for providing the DIP Loan. *See* Ex. A, § 9.

50.     The fees, taken together with the other provisions of the DIP Loan Documents, represent the most favorable terms to the Debtor on which the DIP Lender would agree to make the DIP Loan available. The Debtor considered such fees and expenses when determining in its sound business judgment that the DIP Loan constituted the best terms on which the Debtor could obtain the postpetition financing necessary to continue its operations and prosecute its reorganization through the Bankruptcy Case. The Debtor believes that paying these fees to obtain the DIP Loan is in the best interests of the Debtor's estate, its creditors, and other parties in interest. Accordingly, the Court should authorize the Debtor to pay the required fees in connection with entering into the DIP Loan Documents.

**G.** **The DIP Lender Should Be Afforded Good-Faith Protections Under § 364(e)**

51.     Bankruptcy Code § 364(e) protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Specifically, Bankruptcy Code § 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [Bankruptcy Code § 364] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such

25

authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

52.     The Debtor believes and submits that the terms of the Final Order and DIP Loan are fair, just, and reasonable under the circumstances. Specifically, the DIP Loan and Final Order are ordinary and appropriate for secured financing to a debtor in possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

53.     The terms and conditions of the DIP Loan and Final Order have been negotiated in good faith and at arms' length by and among the Debtor and the DIP Lender, with all parties represented by counsel. As explained herein, the DIP Loan is the result of the Debtor's reasonable and informed determination that the DIP Lender offers the most favorable terms on which to obtain necessary postpetition financing, and is the result of extended arm's-length, good faith negotiations between the Debtor and the DIP Lender. The terms and conditions of the DIP Loan are fair and reasonable, and the proceeds under the DIP Loan will be used only for purposes that are permissible under the Bankruptcy Code. Further, no consideration is being provided to any party to the DIP Loan other than as described in this Motion and the DIP Loan Documents. Accordingly, the Court should find that the DIP Lender is a "good faith" lender within the meaning of Bankruptcy Code § 364(e) and is entitled to all of the protections afforded by that section for purposes of promoting the Debtor's ability to obtain the financing proposed by this Motion.

**H.     The Automatic Stay Should be Modified on a Limited Basis.**

54.     The Debtor requests that the automatic stay imposed under Section 362(a) of the Bankruptcy Code be modified as necessary to effectuate all of the terms, rights, benefits, privileges, remedies and provisions of the Final Order and the DIP Loan Documents (without

further notice, motion, application to, order of, or hearing before this Court), including, without limitation, to permit: (a) the Debtor to take all appropriate actions necessary or reasonably requested by the DIP Lender and the Prepetition Lender to (i) grant the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, or any other liens or claims set forth herein, and (ii) ensure that the DIP Liens, the Adequate Protection Liens, or any other liens granted hereunder are perfected and maintain the priority set forth herein; (b) the Debtor to incur all liabilities and obligations (including the DIP Obligations) to the DIP Lender and the Prepetition Lender (as applicable), as contemplated under this Final Order and the DIP Loan Documents; (c) the Debtor to pay all amounts required under, in accordance with, and subject to the DIP Loan Documents and this Final Order; (d) the DIP Lender and the Prepetition Lender to retain and apply payments made in accordance with the DIP Loan Documents and this Final Order; (e) the DIP Lender (and Prepetition Lender) to exercise, upon the occurrence and during the continuance of any Event of Default under the DIP Loan Documents, all rights and remedies provided for in this Final Order and the DIP Loan Documents and take any or all actions provided therein, in each case without further notice, motion, application to, order of, or hearing before, this Court; and (f) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Final Order and the DIP Loan Documents. For all adequate protection and stay relief purposes throughout the case, the Prepetition Lender shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date.

55.     Stay modifications of this kind are ordinary and standard features of debtor in possession financing arrangements and, in the Debtor's business judgment, are reasonable and fair under the circumstances of this chapter 11 case. *See, e.g., In re Cleveland Integrity Services, Inc.*,

No. 23-90052 (CML) (Bankr. S.D. Tex. Feb. 10, 2023) (modifying automatic stay as necessary to effectuate terms of order); *In re Party City Holdco, Inc*., No. 23-90005 (DRJ) (Bankr. S.D. Tex. Jan. 18, 2023); *In re Sungard AS New Holdings, LLC*, No. 22-90018 (DRJ) (Bankr. S.D. Tex. May 11, 2022) (same); *In re CiCi's Holdings, Inc*., No. 21-30146 (SGJ) (Bankr. N.D. Tex. Jan 27, 2021) (same); *In re Tuesday Morning Corp*., No. 20-31476 (HDH) (Bankr. N.D. Tex. July 10, 2020) (same); *In re Taco Bueno Restaurants, Inc*., No. 18-33678 (SGJ) (Bankr. N.D. Tex. Nov. 30, 2018) (same). Accordingly, the automatic stay should be modified on a limited basis as set forth in the Final Order.

**I.      Request for Final Hearing**

56.      Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is to be held as soon as reasonably practicable following the expiration of the deadline to file timely objections to this Motion.

**J.      Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

57.      Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**K.      Notice**

58.      Notice of this Motion has been provided by the Debtor, whether by facsimile, email, electronic service, overnight courier, U.S. Mail First Class postage pre-paid, or hand delivery, to: (i) the twenty (20) largest unsecured creditors of the Debtor; (ii) the Office of the United States Trustee for the Western District of Texas (the "U.S. Trustee"); (iii) Bryan Cave Leighton Paisner

LLP ("BCLP"), as counsel to the DIP Lender and the Prepetition Lender; (iv) all other parties with liens of record on assets of the Debtor (as disclosed in lien searches completed by the Debtor prior to the Relief Date); and (v) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under Bankruptcy Rules 2002, 4001, or 9014 and any applicable Local Rules. The Debtor submits that no other notice need be given.

## VI.     <u>CONCLUSION</u>

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests that the Court enter its proposed Final Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, granting the relief requested in this Motion, and that the Court grant the Debtor all other relief, at law or in equity, to which it may be justly entitled.

RESPECTFULLY SUBMITTED this 26th day of December, 2024.

**MUNSCH HARDT KOPF & HARR, P.C.**

By:   */s/ Thomas D. Berghman*
    Thomas D. Berghman
    Texas Bar No. 24082683
    Jay H. Ong
    Texas Bar No. 24028756
    1717 West 6th Street, Suite 250
    Austin, Texas 78703
    Telephone: (512) 391-6100
    Facsimile: (512) 391-6149
    E-mail:     tberghman@munsch.com
              jong@munsch.com

***Counsel for RIC (Austin), LLC***

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 26th day of December, 2024, he personally caused true and correct copies of the foregoing pleading, along with the Proposed Order, but not Exhibit B, C, and D, to be served via U.S. mail, postage prepaid, upon the parties listed on the service list attached hereto, and upon all parties receiving electronic notice through the Court's CM/ECF system, which sent notification to the parties shown below. Copies of Exhibit B, C, and D are available upon request.

Panache Development & Construction Inc.
c/o Kell C. Mercer, Esq.
Kell C. Mercer PC
901 S. Mopac Expy Bldg. 1, Suite 300
Austin, Texas 78746
E-mail: kell.mercer@mercer-law-pc.com

Vesta Texas, LLC
c/o John C. Roy
Ross, Smith & Binford, PC
2901 Via Fortuna, Bldg. 6, Suite 450
Austin, Texas 78746
Email: casey.roy@rsbfirm.com

Romspen Mortgage Limited Partnership
c/o Kyle Hirsch
State Bar No. 24117262
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
E-mail: kyle.hirsch@bclplaw.com

Gary W. Wright
Office of U.S. Trustee
903 San Jacinto Blvd. #230
Austin, Texas 78701
E-mail: gary.wright3@usdoj.gov

Adam Zarafshani and
AFMN Investments, LLC
c/o B. Russell Horton
State Bar No. 10014450
GEORGE BROTHERS KINCAID &
HORTON, LLP
625 Norwood Tower
114 West 7th Street
Austin, Texas 78701
Email: rhorton@gbkh.com

By: */s/ Thomas D. Berghman*
       Thomas D. Berghman, Esq.