**The relief described hereinbelow is SO ORDERED.**

**Signed January 28, 2025.**

_____
**CHRISTOPHER G. BRADLEY**
**UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 24-10264-cgb |
| RIC (Austin) LLC | § | |
| | § | Chapter 11; Subchapter V |
| Debtor. | § | |

### INTERIM ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN SECURED POSTPETITION FINANCING, AND (B) GRANTING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; AND (II) GRANTING RELATED RELIEF

CAME ON FOR CONSIDERATION pursuant to a hearing scheduled for January 28, 2025

("Interim Hearing"), to consider, on an interim basis, the motion dated December 26, 2024 (the

"Motion")[1] of the above-captioned debtor and debtor in possession (the "Debtor") filed in the

above-captioned chapter 11 case (the "Case"), pursuant to which the Debtor, _inter alia_, seeks entry

of an order (this "Interim Order"), under Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2),

364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532

(the "Bankruptcy Code"), Rules 2002, 4001, 6004, 9013, and 9014 of the Federal Rules of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion, and if none, then, as set forth in the DIP Loan Documents.

1

Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Western District of Texas (the "Local Rules"), providing for the following requested relief on an interim basis, among other requests:

(1)    authorization for the Debtor to (A) obtain postpetition secured debtor in possession financing in an aggregate principal amount of up to $5,000,000.00 (the "DIP Loan") pursuant to one or more DIP Loan Advances (as defined herein) made by Romspen Mortgage Limited Partnership (the "DIP Lender") to Debtor in accordance with the terms and conditions contained in the DIP Loan Agreement (as defined herein), secured by the DIP Liens on the DIP Collateral (each as defined herein), and (B) incur all Indebtedness (as defined in the DIP Loan Agreement) in respect of the DIP Loan, including the DIP Loan Advances and other amounts payable to the DIP Lender under the DIP Loan Documents and this Interim Order (the "DIP Obligations") (the DIP Loan Agreement, this Interim Order, and each of the additional loan documents that evidences, secures, or relates to the DIP Loan, each as amended, restated, supplemented, waived, or otherwise modified from time to time, all in accordance with, and subject to, the terms of this Interim Order, are referred to collectively as the "DIP Loan Documents");

(2)    authorization for the Debtor, during the period from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order (defined below) or (ii) the Termination Date (as defined herein) (such period, the "Interim Period"), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents and this Interim Order, to request extensions of credit up to an initial aggregate outstanding principal amount of up to $1,500,000 pursuant to the terms of the DIP Loan Documents and this Interim Order (collectively, the "Interim Financing");

2

(3) authorization for the Debtor to execute and deliver the DIP Loan Agreement and any other DIP Loan Documents (and any amendments, supplements, or modifications thereto) and to perform all of its obligations thereunder and such other and further acts as may be necessary or desirable in connection with the DIP Loan Documents;

(4) the grant of allowed superpriority administrative expense claims pursuant to Section 364(c)(1) of the Bankruptcy Code for all DIP Obligations, as more fully set forth in this Interim Order;

(5) modification of the automatic stay imposed under Section 362 of the Bankruptcy Code, to the extent necessary, to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order; and

(6) the scheduling of a further / final hearing to consider entry of an order granting the relief requested pursuant to the Motion, on a final basis (the "Final Order"), or further interim relief.

This Court having found and determined that due notice of the relief sought in the Motion and the Interim Hearing was provided by the Debtor in accordance with Bankruptcy Rules 2002, 4001 and 9014 and all applicable Local Rules, and having held the Interim Hearing on January 28, 2025; entry of this Interim Order having been consented to and approved by Adam Zarafshani and the named plaintiffs in the Pending Action (specifically Panache, AFMN, and Vesta, and collectively with Zarafshani, the "Panache Parties"); and after considering the Motion, the DIP Loan Documents, and the entire record in connection with the Interim Hearing; and it appearing to this Court that granting the relief requested in the Motion on an interim basis as provided herein is fair and reasonable and in the best interests of the Debtor, its creditors, and its estate, represents a sound exercise of the Debtor's business judgment, and is necessary for the continued operation

3

of the Debtor and the preservation and protection of property of the Debtor and its estate; and upon the record of the Case and after due deliberation and consideration and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY FURTHER FINDS AND CONCLUDES AS FOLLOWS:**

A.      *Petition Date; Relief Date.* On March 12, 2024 (the "Petition Date"), Panache Development and Construction, Inc. ("Panache") filed its *Involuntary Petition under Chapter 7*, which Panache subsequently amended on April 3, 2024 (the "Involuntary Petition," at ECF No. 5).  On April 29, 2024, the Debtor filed its *Answer to Involuntary Petition* (the "Answer," at ECF No. 13), and also filed its *Motion to Convert Chapter 7 Case to Chapter 11* (the "Motion to Convert," at ECF No. 14).  On September 9, 2024 (the "Relief Date"), the Court entered its *Agreed Order for Relief under Subchapter V of Chapter 11 of Title 11 of the United States Code* (the "Order for Relief," at ECF No. 28), granting relief against Debtor under Chapter 11, Subchapter V, of the Bankruptcy Code.  On and after the Relief Date, the Debtor has operated its business and managed its property as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been appointed in the Case.

B.      *Jurisdiction and Venue.* This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), as to which this Court has the constitutional authority to enter this Interim Order.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      *Committee Formation.* As of the date hereof, no official committee of unsecured creditors or any other statutory committee has been appointed in the Case.

E.      *Need for Postpetition Financing.* Based upon the pleadings and proceedings of record in the Case, the Debtor does not have sufficient available sources of working capital and

financing to carry on its business operations and to preserve and protect its assets without the DIP Loan. In addition, based on the record presented at the Interim Hearing: (i) the Debtor's critical need for financing is immediate and the entry of this Interim Order is necessary to avoid immediate and irreparable harm to the Debtor's estate and the value of its assets; (ii) in the absence of the DIP Loan authorized by this Interim Order, serious and irreparable harm to the Debtor and its estate would occur; and (iii) the preservation, maintenance and enhancement of the value of the Debtor's assets are of the utmost significance and importance.

F. _No Credit Available on More Favorable Terms._ Given its current financial condition, the Debtor is unable to obtain sufficient committed financing from sources other than the DIP Lender on terms more favorable than the DIP Loan. The Debtor is not able to obtain unsecured committed financing allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code. The Debtor also has been unable to obtain remotely sufficient committed financing (a) having priority over administrative expenses of the kind specified in Sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Adequate financing on a postpetition basis is unavailable to the Debtor without providing the DIP Lender: (i) the DIP Liens on the DIP Collateral (each as defined herein), as provided herein and in the DIP Loan Documents with the priorities set forth herein; (ii) the DIP Superpriority Claims (as defined herein); and (iii) the other rights, protections and benefits set forth in this Interim Order. After considering all alternatives, the Debtor has concluded, in the exercise of its sound business judgment, that the DIP Loan represents the best financing available to it at this time and is in the best interests of its estate and creditors.

G.     _Sections 506(c)._  As a material inducement to the DIP Lender to agree to provide the DIP Loan and in exchange for, among other things, the DIP Lender's and the Prepetition Lender's agreement to subordinate the DIP Liens and the Prepetition Liens to the Carve-Out (as defined herein), the DIP Lender and the Prepetition Lender shall receive a waiver of the provisions of Section 506(c) of the Bankruptcy Code.

H.     _Use of Proceeds of the DIP Loan; Consent of Prepetition Lender and Panache Parties._  The Debtor has received the necessary consents from the Prepetition Lender and from the Panache Parties to the financing arrangements contemplated by this Interim Order and the DIP Loan Documents.  Such consent is expressly limited to the postpetition financing being provided by the DIP Lender (as contemplated by this Interim Order and the DIP Loan Documents), and shall not without further consent extend to any other postpetition financing or to any modified version of the DIP Loan.  As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Loan, the DIP Lender and the Prepetition Lender require, and the Debtor has agreed, that proceeds of the DIP Loan shall be used solely in accordance with the Budget Requirements, the DIP Loan Documents, and this Interim Order.  Panache Parties expressly agree and acknowledge that DIP Lender's agreement to make the DIP Loan and enter into the DIP Loan Documents, and the entry of this Interim Order authorizing the same, and the funding of the DIP Loan as provided in the DIP Loan Documents, shall not constitute a breach or default in connection with the ICA (defined below) or any other prepetition agreements between any of the Panache Partes and either the DIP Lender or the Prepetition Lender or require any consent thereunder by of any of the Panache Parties; and in the event the foregoing constitutes a breach or default (or requires any consent) under any such prepetition agreements, the Panache Parties expressly waive such breach or default or provide such consent. The Panache Parties do not hereby waive any other

breach or default that may exist, now or in the future, between the Panache Parties and the Prepetition Lender in connection with the ICA or any other prepetition agreements between any of the Panache Parties and the Prepetition Lender.

I. *Good Faith of the DIP Lender.* The DIP Lender has indicated a willingness to provide financing to the Debtor subject to: (i) entry of this Interim Order; (ii) approval of the terms and conditions of the DIP Loan and the DIP Loan Documents; (iii) satisfaction of the conditions to closing on the DIP Loan set forth in the DIP Loan Documents; (iv) The Panache Parties' agreement and acknowledgement described in Paragraph H above; and (iv) findings and determinations by this Court that the DIP Loan is essential to the Debtor's estate, that the DIP Lender is extending credit to the Debtor pursuant to the DIP Loan Documents in good faith, and that the DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided by Section 364(e) of the Bankruptcy Code. Based upon the pleadings and proceedings of record in the Case, (x) the terms and conditions of the DIP Loan and the DIP Loan Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtor under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration, (y) the terms and conditions of the DIP Loan were negotiated in good faith and at arms' length among the Debtor, the DIP Lender, and the Prepetition Lender, with the assistance and counsel of their respective advisors, and (z) any credit extended, loans made, and other financial accommodations extended to the Debtor by the DIP Lender pursuant to this Interim Order, have been extended, issued or made, as the case may be, in "good faith" within the meaning of Section 364(e) of the Bankruptcy

Code and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code, and with respect to the Interim Funding authorized by this Interim Order, the DIP Loan, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

J.      *Notice.*  Notice of the Interim Hearing and the proposed entry of this Interim Order has been provided by the Debtor, whether by facsimile, email, overnight courier, or hand delivery, to: (i) the twenty (20) largest unsecured creditors of the Debtor; (ii) the Office of the United States Trustee for the Western District of Texas (the "U.S. Trustee"); (iii) Bryan Cave Leighton Paisner LLP ("BCLP"), as counsel to the DIP Lender and the Prepetition Lender; (iv) all other parties with liens of record on assets of the Debtor (as disclosed in lien searches completed by the Debtor prior to the Petition Date); and (v) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under Bankruptcy Rules 2002, 4001, or 9014 and any applicable Local Rules.  Requisite notice of the Motion and the relief requested thereby has been provided and no other notice need be provided for entry of this Interim Order.

Based on the foregoing finding and conclusions, the Motion, and the record made before this Court in the Case and at the Interim Hearing, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      Approval of Interim Order.  The Motion is approved, on an interim basis, on the terms and conditions set forth in this Interim Order. This Interim Order shall become effective immediately upon its entry.

8

2.      <u>Approval of DIP Loan Documents; Authority Thereunder.</u>  The DIP Loan is hereby approved to the extent set forth herein.  The Debtor is hereby authorized to the extent set forth in this Interim Order to (a) execute and deliver the DIP Loan Documents (including the DIP Loan Agreement) and such additional documents, instruments, certificates, and agreements as may be required or reasonably requested by the DIP Lender to give full effect to all terms and conditions contained in the DIP Loan Documents and this Interim Order, (b) incur and perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and (c) following the occurrence of the DIP Loan Effective Date (as defined in the DIP Loan Agreement) and prior to the occurrence of the Termination Date, request DIP Loan Advances up to the aggregate amount of the Interim Funding.

3.      <u>Validity of DIP Loan Documents and DIP Obligations.</u>  Upon execution and delivery, each of the DIP Loan Documents shall constitute and evidence (and shall deemed to be) the legal, valid, and binding obligation of the Debtor, enforceable against the Debtor, its estate and any successors thereto, including any trustee appointed in the Case, including, but not limited to, any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Case (a "<u>Successor Case</u>").  Loans and advances made under the DIP Loan (the "<u>DIP Loan Advances</u>") will fund the Debtor's working capital and general corporate needs in the ordinary course of business and be available to pay such other amounts as are required or permitted to be paid pursuant to the DIP Loan Documents, this Interim Order and any other orders of this Court, in each case to the extent permitted under the DIP Loan Documents and in compliance with the Budget Requirements.  No DIP Obligations or any other obligation, payment, transfer, or grant of security under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voided, or voidable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any avoidance,

defense, reduction, setoff, recoupment, counterclaim, recharacterization, subordination, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.  <u>Authorization to Borrow.</u>  Subject to the terms and conditions of this Interim Order and the DIP Loan Documents and in compliance with the Budget Requirements, from the DIP Loan Effective Date (as defined in the DIP Loan Agreement) through the occurrence of the Termination Date (as defined herein), the Debtor is authorized to request DIP Loan Advances up to the aggregate amount of the Interim Funding.  The DIP Lender shall have no obligation to make a DIP Loan Advance unless all of the conditions precedent to the making of such DIP Loan Advance under the DIP Loan Documents and this Interim Order have been (x) satisfied in full, or (y) waived by the DIP Lender in its sole and absolute discretion.

5.  <u>Use of Proceeds; No Segregation.</u> Notwithstanding anything to the contrary in any prior order entered in the Case, and after the entry of this Interim Order, the Debtor shall use proceeds of the DIP Loan only for the purposes permitted by this Interim Order and the DIP Loan Documents and in compliance with the Budget Requirements.  The DIP Liens on DIP Collateral shall continue to attach to Cash Collateral irrespective of the commingling of Cash Collateral with other cash of the Debtor (if any).  Any failure by the Debtor on or after the Petition Date to comply with the segregation requirements of Section 363(c)(4) of the Bankruptcy Code in respect of any Cash Collateral shall not be used as a basis to challenge the extent, validity, enforceability or perfected status of any DIP Liens.

6.  <u>Approved Budget.</u>

(a)  <u>General.</u> Except as otherwise provided herein or approved by the DIP Lender, proceeds of the DIP Loan shall be used only in compliance with the Budget Requirements.

(b)     Initial Budget.  Attached as Exhibit 1 hereto and incorporated by reference herein is a budget depicting on a line item basis the approved expenditures, in form and substance satisfactory to the DIP Lender in its sole discretion (the "Initial Budget").  Upon entry of this Interim Order, the Initial Budget shall be deemed the "Approved Budget" (as defined in the DIP Loan Agreement).[2]

(c)      Budget Compliance. The Debtor shall at all times comply with the Approved Budget, and all other budget conditions, requirements, and limitations set forth in this Interim Order and in the DIP Loan Documents (collectively, the "Budget Requirements").  The Debtor shall provide all reports and other documents and information required in the DIP Loan Documents or reasonably requested by the DIP Lender, and the Debtor's failure to comply with the Budget Requirements or to provide the reports and other documents and information required in the DIP Loan Documents shall constitute a DIP Loan Default (as defined in the DIP Loan Agreement) under the DIP Loan Documents.

7.     Payment of Lender Expenses.  The Debtor is hereby authorized and directed to pay upon demand all Lender Expenses (as defined in the DIP Loan Agreement) and all other fees, costs, expenses, premiums and other amounts payable under the terms of the DIP Loan Documents, including, without limitation, the reasonable and documented postpetition fees and out-of-pocket costs and expenses of BCLP and any other counsel, appraisers, advisors, professionals and/or consultants retained in connection with advising the DIP Lender.  Payment of such amounts shall not be subject to Court approval or U.S. Trustee fee guidelines or subject to the provisions of Sections 327, 328, 329, 330 or 331 of the Bankruptcy Code, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

---

[2] The Initial Budget attached to this Interim Order as Exhibit 1 has been approved by the DIP Lender and by the Panache Parties.

Any professional of the DIP Lender that is seeking payment of fees and expenses from the Debtor shall provide summary copies of its invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to attorney-client privilege, any information constituting attorney work product, or any other confidential information) via email (or other electronic means) to counsel for the Debtor, the Panache Parties, and the U.S. Trustee. The Debtor shall pay the full amount invoiced within ten (10) calendar days (the "Review Period") after receipt of the applicable invoice, regardless of whether such amounts are in excess of the amounts set forth in the Approved Budget and, in such event, such Approved Budget shall automatically be deemed conformed to permit the payment of such invoice. In the event that the U.S. Trustee raises an objection with respect to any invoice during the applicable Review Period (which objection must be in a writing delivered by email (or other electronic means) to the relevant professional that states with particularity the fees and/or expenses being objected to and the grounds therefor) and the parties are unable to fully resolve such objection, this Court shall hear and determine such dispute, provided that neither the raising of an objection to an invoice nor the inability of the parties to fully resolve such objection shall delay payment of such invoice, and the relevant professional shall only be required to disgorge amounts objected to upon being so ordered, pursuant to a final order of this Court. All unpaid Lender Expenses and other unpaid fees, costs, expenses and other amounts owed or payable to the DIP Lender shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Loan Documents.

8.    Indemnification. The Debtor shall indemnify and hold harmless the DIP Lender with respect to matters relating to the Interim Funding or other relief authorized by this Interim Order, and in accordance with the terms and conditions contained in the DIP Loan Documents.

9.      <u>DIP Superpriority Claims.</u>   Immediately upon and effective as of entry of this

Interim Order, pursuant to Section 364(c)(1) of the Bankruptcy Code, the DIP Obligations shall

constitute allowed superpriority administrative expense claims against the Debtor and its estate

(the "<u>DIP Superpriority Claims</u>"), senior to and with priority in payment over any and all

administrative expense claims, adequate protection and other diminution claims, priority and other

unsecured claims, and any other claims against the Debtor or its estate in the Case or any Successor

Case, at any time existing or arising, of any kind or nature whatsoever, including, without

limitation, the kinds specified in or ordered pursuant to any provision of the Bankruptcy Code,

including, but not limited to, Sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c),

507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 of the Bankruptcy Code or otherwise, including

those resulting from the conversion of the Case pursuant to Section 1112 of the Bankruptcy Code,

whether or not such expenses or claims may become secured by a judgment lien or other non-

consensual lien, levy or attachment; <u>provided, however,</u> that the DIP Superpriority Claims shall

be subject to the Carve-Out and shall not be payable from any commercial tort claims or chapter

5 causes of action of the Debtor which are expressly not part of the DIP Collateral pursuant to the

terms of this Interim Order (and which remain subject to DIP Lender's right to assert, on a *nunc*

*pro tunc* basis or otherwise, in connection with any final or other order of this Court).  The DIP

Superpriority Claims shall, for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code, be

considered an administrative expense allowed under Section 503(b) of the Bankruptcy Code and

shall be payable from and have recourse to all DIP Collateral.  Except for the Carve-Out, the DIP

Superpriority Claims shall not be or be made junior to or *pari passu* with any claim heretofore or

hereafter granted or created in the Case or any Successor Case and shall be valid and enforceable

against the Debtor, its estate and any successors thereto, including, without limitation, any trustee

13

appointed in the Case or any Successor Case until such time as the DIP Obligations are paid in full.

10.     DIP Liens.  Effective as of entry of this Interim Order, the DIP Lender is granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens on (the "DIP Liens") all DIP Collateral as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration, or otherwise) of the DIP Obligations. As used in this Interim Order, the term "DIP Collateral" means all assets and properties (whether tangible, intangible, real, personal, or mixed) of the Debtor and its estate, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtor, and whether owned or consigned by or to, or leased from or to, or hereafter acquired by, the Debtor, and regardless of where located, before or after the Petition Date, including, without limitation: (i) all Prepetition Collateral (defined below); (ii) all cash and cash equivalents; (iii) all deposit accounts, securities accounts, or other accounts of the Debtor and all cash and other property deposited therein or credited thereto from time to time; (iv) all accounts and other receivables; (v) all contracts and contract rights; (vi) all instruments, documents, and chattel paper; (vii) all securities (whether or not marketable); (viii) all goods, as-extracted collateral, equipment, inventory, and fixtures; (ix) all real property interests (whether legal or equitable); (x) all interests in leaseholds, (xi) all franchise rights; (xii) all patents, tradenames, trademarks, copyrights, and other intellectual property; (xiii) all general intangibles; (xiv) all capital stock, limited liability company interests, partnership interests, and financial assets; (xv) all investment property; (xvi) all supporting obligations; (xvii) all letters of credit issued to the Debtor and letter of credit rights; (xviii) all actions brought under Section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral and all proceeds of any such actions;

14

(xix) all books and records (including, without limitation, customers lists, credit files, computer programs, printouts, and other computer materials and records); (xx) to the extent not covered by the foregoing, all other goods, assets or properties of the Debtor, whether tangible, intangible, real, personal or mixed; and (xxiii) all products, offspring, profits, and proceeds of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable from time to time with respect to any of the foregoing; provided, however, notwithstanding anything contained herein or in the DIP Loan Documents, for purposes of this Interim Order the DIP Collateral shall not include commercial tort claims or chapter 5 causes of actions (save and except actions brought under Section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral and all proceeds of such actions) (collectively, the "Avoidance Actions").  DIP Lender expressly reserves the right to seek entry of an order of the Court, whether in connection with final or any other relief, and whether on a *nunc pro tunc* basis or otherwise, that includes the Avoidance Actions as part of the DIP Collateral.  As used herein (1) "Prepetition Liens" means the liens on and security interests in all real property, fixtures and other assets identified in that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 2, 2020, executed by the Debtor in favor of Romspen Mortgage Limited Partnership, as lender (the "Prepetition Lender") and recorded with Travis County, Texas County Clerk on December 8, 2020, and that certain Subordinate Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 6, 2023, executed by the Debtor in favor of the Prepetition Lender and recorded with Travis County, Texas County Clerk on June 13, 2023 (the "Prepetition Collateral"), (2) "Prepetition Obligations" means all obligations

secured by the Prepetition Liens, and (3) "Prepetition Documents" means all documents and instruments executed in connection with or evidencing the Prepetition Obligations.

11.    <u>Priority of DIP Liens.</u>

(a)    Effective upon entry of this Interim Order, the DIP Liens shall constitute continuing, valid, binding, enforceable, non-avoidable, automatically and properly perfected security interests in and liens on in the DIP Collateral that secure the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration, or otherwise) of the DIP Obligations as follows:

(i)    pursuant to Section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to any valid, enforceable, prior, perfected, and non-avoidable liens and security interests on the DIP Collateral existing as of the Petition Date, including any such liens and security interests asserted by the Prepetition Lender and the Panache Parties (collectively, the "<u>Existing Liens</u>"); and

(ii)    pursuant to Section 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected first priority senior priming liens on and security interests in all DIP Collateral that is subject to any Existing Liens, which senior priming liens and security interests in favor of the DIP Lender shall be senior to the Existing Liens and shall not be subject to any other liens and security interests on the DIP Collateral existing as of the Petition Date.

(b)    Except as expressly set forth herein, the DIP Liens: (i) shall not be or be made junior to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in the Case or any Successor Case, and shall be valid and enforceable against the Debtor, its estate, any trustee or any other estate representative appointed or elected in the Case or any Successor Case and/or upon the dismissal of any of the Case or any Successor Case, and (B) any lien or interest that is avoided and preserved for the benefit of the Debtor and its estate under Section 551 of the Bankruptcy Code or otherwise; and (ii) shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code.

16

12.     Section 507(b) Reservation. Subject only to the Carve-Out described in paragraph 13 below, nothing contained herein shall impair or modify the application of Section 507(b) of the Bankruptcy Code in connection with any request for either the modification of existing adequate protection or the grant of additional adequate protection by any party.

13.     Carve-Out. As used in this Interim Order, the term "Carve-Out" shall mean, to the extent that sufficient unencumbered funds are not available on the date of the delivery of a Carve-Out Trigger Notice (as defined herein) to pay administrative expenses in full, proceeds of the DIP Collateral to pay the following:

(i)     all fees required to be paid to the Clerk of this Court and to the Office of the U.S. Trustee under Section 1930(a) of Title 28 of the United States Code plus interest at the statutory rate; and

(ii)     unpaid fees and expenses (the "Carve-Out Fees") incurred by any professional or professional firm retained by the Debtor pursuant to Sections 327, 328, 330, 331, 363, 1184 or 1185 of the Bankruptcy Code and by any person appointed to serve as Subchapter V trustee in the Case (collectively, the "Carve-Out Parties") before or on the Carve-Out Trigger Notice Date (as defined herein), but only to the extent that payment of such Carve-Out Fees (A) does not violate any of the limitations or restrictions related to use of the Carve-Out set forth in the DIP Loan Documents, and (B) is otherwise in accordance with the Approved Budget (subject to Permitted Variances) and subsequently allowed on a final basis by this Court.

For purposes of the foregoing, (x) "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtor, its lead restructuring counsel, and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of a DIP Loan Default and acceleration of the DIP Obligations under the DIP Loan, stating that the Carve-Out has been invoked, and (y) "Carve-Out Trigger Notice Date" shall mean the business day on which the Carve-Out Trigger Notice is delivered by the DIP Lender to the Debtor, its lead restructuring counsel, and the U.S. Trustee.

(b)     No Direct Obligation To Pay Allowed Carve-Out Fees. Other than the obligation of the DIP Lender to fund the amount of the Carve-Out Reserve (as such term is defined

17

in the DIP Loan Documents) under the DIP Loan Documents on the Carve-Out Trigger Notice Date, the DIP Lender shall not have any obligation for the payment or reimbursement of any Carve-Out Fees incurred in connection with the Case or any Successor Case.  Except as expressly provided in the immediately preceding sentence, nothing herein or otherwise shall be construed to obligate the DIP Lender, in any way, to pay compensation to, or to reimburse expenses of, any Carve-Out Party or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

(c)     Objection Rights. Nothing contained herein is intended to constitute, nor shall be construed as consent to, the allowance of any Carve-Out Party's fees, costs or expenses by any party and shall not affect the right of the Debtor, the DIP Lender, or any other party-in-interest to object to the allowance and/or payment of any such amounts incurred or requested.

14.     Limitation on Use of DIP Loan Proceeds.  Notwithstanding anything herein to the contrary, no portion of the Carve-Out, the DIP Loan, or the DIP Collateral, (or the proceeds of any of the foregoing) shall include, apply to, be available for, or be used for payment of any fees, costs or expenses incurred by the Debtor or any other any party in connection with any of the following (each, a "Lender Claim"): (a) investigating or challenging in any way and against any party the DIP Obligations, the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, or any other security interests, liens, or claims of the DIP Lender (including with respect to the validity, enforceability, priority, extent, nature, or amount of any of the foregoing or any defense, counterclaim, or offset to any of the foregoing), (b) investigating, challenging or asserting any action seeking to invalidate, modify, set aside, recharacterize, avoid, or subordinate in any way and against any party the Prepetition Obligations, the Prepetition Documents, the Prepetition Liens,  the or any other security interests, liens, or claims of the Prepetition Lender (including with

18

respect to the validity, enforceability, priority, extent, nature, or amount of any of the foregoing or any defense, counterclaim, or offset to any of the foregoing), (c) investigating or asserting any claims or causes of action arising under chapter 5 of the Bankruptcy Code (or state law equivalents) against the Prepetition Lender, (d) investigating or asserting any so-called "lender liability" claims and causes of action against the Prepetition Lender; (e) asserting any claims or causes of action to prevent, hinder or delay the DIP Lender's or the Prepetition Lender's assertions, enforcement or realization on the DIP Collateral or the Prepetition Collateral, as applicable, in accordance with this Interim Order, the DIP Loan Documents, or the Prepetition Documents, as applicable; or (f) seeking to amend or modify any of the rights, remedies, priorities, privileges, protections and benefits granted to the DIP Lender or the Prepetition Lender under this Interim Order or the DIP Loan Documents; provided, however, that no more than $25,000 of the Carve-Out, the DIP Loan, the DIP Collateral, or the Prepetition Collateral, (or the proceeds of any of the foregoing) may be used for payment of allowed fees, expenses and costs incurred by the Debtor or its professionals to investigate (but not initiate, assert, join, commence, support or prosecute) possible Lender Claims against the Prepetition Lender.

(b)  <u>Section 506(c) Waiver.</u>  The Debtor irrevocably waives and is prohibited from asserting any surcharge claim, whether under Sections 105(a) or 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lender upon the DIP Collateral, and (b) no costs or expenses of administration that have been or may be incurred in the Case or any Successor Case at any time shall be charged against the DIP Lender, any of its claims or liens (including any claims or liens granted pursuant to this Interim Order), or the DIP Collateral pursuant to Sections 105(a) or 506(c) of the Bankruptcy Code or otherwise.

15. <u>No Marshaling/Application of Proceeds.</u> The Debtor irrevocably waives and is prohibited from asserting the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral, and in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral. All proceeds of the DIP Collateral shall be received and used in accordance with this Interim Order and the DIP Loan Documents.

16. <u>Disposition of Collateral</u>. Except as expressly permitted by the DIP Loan Documents, (a) the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any of the DIP Collateral other than in the ordinary course without an order of this Court and (b) shall apply all net proceeds of the DIP Collateral, whether sold in the ordinary course or otherwise, as provided in the DIP Loan Documents.

17. <u>Proceeds of Subsequent Financing.</u> If the Debtor, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in the Case or any Successor Case shall obtain credit or incur debt pursuant to Sections 364(b), 364(c), or 364(d) of the Bankruptcy Code or in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full of the DIP Obligations and the termination of DIP Lender's obligation to extend credit under the DIP Loan (including subsequent to the confirmation of any Chapter 11 plan with respect to the Debtor and the Debtor's estate) and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied in accordance with this Interim Order and the DIP Loan Documents.

18. <u>Protections of Rights of DIP Lender and Prepetition Lender.</u>

(a) Unless the DIP Lender shall have provided its prior written consent (the Prepetition Lender's consent shall only be required to the extent that the Prepetition Lender's

interests would be materially adversely affected by entry of any order described below), or all DIP Obligations have been indefeasibly paid in full in cash and the lending commitments under the DIP Loan have terminated, there shall not be entered in the Case or any Successor Case any order (including any order confirming a Chapter 11 plan) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, or the DIP Superpriority Claims, except as expressly set forth in this Interim Order or the DIP Loan Documents; (ii) the modification of any rights of the DIP Lender under this Interim Order or the DIP Loan Documents.

(b)     The Debtor (and/or its legal and financial advisors in the case of clauses (i) through (iii) below) will: (i) reasonably cooperate with, consult with, and provide to the DIP Lender all such information and documents that the Debtor is obligated (including upon reasonable request by the DIP Lender) to provide under the DIP Loan Documents or the provisions of this Interim Order; (ii) upon reasonable advance notice, during normal business hours, permit the DIP Lender and its advisors to visit and inspect any of the Debtor's business premises and other properties, to examine and make abstracts or copies from any of its non-privileged books, records, reports, and other papers, and to discuss its affairs, finances, properties, business operations, and accounts with its officers, employees, independent public accountants, and other professional advisors; (iii) upon reasonable advance notice, during normal business hours, permit the DIP Lender to consult with the Debtor's management and advisors on matters concerning the Debtor's business, financial condition, operations, and assets; and (iv) upon reasonable advance notice, permit the DIP Lender to conduct, at its discretion and at the Debtor's cost and expense, field

21

audits, non-privileged collateral examinations, liquidation valuations, environmental surveys, and appraisals at reasonable times in respect of any or all of the DIP Collateral and the Prepetition Collateral in accordance with the DIP Loan Documents.

(c)     So long as there are any DIP Obligations outstanding under the DIP Loan or the DIP Lender has any obligation to make DIP Loan Advances under the DIP Loan Documents, the Prepetition Lender shall (a) have no right to, and take no action to, foreclose upon or recover in connection with the Prepetition Liens or otherwise exercise any enforcement rights or remedies against any DIP Collateral, except to the extent authorized by an order of this Court, (b) be deemed to have consented to any release of DIP Collateral authorized under the DIP Loan Documents, (c) not file any further financing statements, patent filings, trademark filings, copyright filings, mortgages, memoranda of lease, notices of lien or similar instruments, enter into any deposit account control agreements, or otherwise take any action to perfect its security interests in the DIP Collateral, unless, solely as to this clause (c), the DIP Lender also files financing statements or other documents to perfect the liens granted pursuant to the DIP Loan Documents and/or this Interim Order, or as may be required by applicable state law to preserve valid and unavoidable liens or security interests as of the Petition Date, (d) deliver or cause to be delivered any termination statements, releases and/or assignments (to the extent provided for herein) in favor of the DIP Lender or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of the Prepetition Liens on any portion of the DIP Collateral subject to any sale or disposition approved or arranged for by the DIP Lender.

19.     <u>Automatic Effectiveness of Liens.</u> The DIP Liens shall not be subject to challenge by any party in interest in this Case, and shall constitute and remain valid, perfected, binding, enforceable, non-avoidable and effective liens from and after the Petition Date without any further

action by the Debtor, the DIP Lender, or the Prepetition Lender, respectively, and without the necessity of executing, filing, recording, or obtaining any financing statements, security agreements, mortgages, deposit account control agreements, filings with a governmental unit (including, without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents, agreements, or instruments or the taking of any other actions (including, for the avoidance of doubt, entering into any deposit account control agreement or taking possession of any collateral) to validate, perfect or continue the perfection of (in accordance with applicable law) the DIP Liens, or to entitle the DIP Lender to the priorities granted herein.  If the DIP Lender hereafter requests that the Debtor execute and deliver (or ensure the execution and delivery by third parties of) any financing statements, security agreements, mortgages, deposit account control agreements, filings with a governmental unit (including, without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents, agreements, or instruments considered by the DIP Lender to be reasonably necessary or desirable to further evidence the perfection or continuation of the DIP Liens, the Debtor is hereby authorized and directed to execute and deliver (and to ensure the execution and delivery by third parties of) any such documents, agreements, and instruments to the DIP Lender, and the DIP Lender is hereby authorized to obtain, file or record any such documents, agreements or instruments in its discretion without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code, and any such documents, agreements or instruments obtained, filed or recorded shall be deemed to have been obtained, filed or recorded at the time and on the Petition Date; provided, however, that no such obtaining, filing or recordation shall be necessary or required in order to evidence, validate, perfect or continue the DIP Liens.  The DIP Lender in its sole discretion, may file a copy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or

23

similar office in addition to, or in lieu of, such financing statements, mortgages, notices of liens or similar documents, agreements, or instruments, and any such filing, recording, or similar office is directed to accept such filing as a financing statement.

20.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms, rights, benefits, privileges, remedies and provisions of this Interim Order and the DIP Loan Documents (without further notice, motion, application to, order of, or hearing before this Court), including, without limitation, to permit: (a) the Debtor to take all appropriate actions necessary or reasonably requested by the DIP Lender to (i) grant the DIP Superpriority Claims, or any other liens or claims set forth herein, and (ii) ensure that the DIP Liens, or any other liens granted hereunder are perfected and maintain the priority set forth herein; (b) the Debtor to incur all liabilities and obligations (including the DIP Obligations) to the DIP Lender, as contemplated under this Interim Order and the DIP Loan Documents; (c) the Debtor to pay all amounts required under, in accordance with, and subject to the DIP Loan Documents and this Interim Order; (d) the DIP Lender to retain and apply payments made in accordance with the DIP Loan Documents and this Interim Order; (e) the DIP Lender to exercise, upon the occurrence and during the continuance of any DIP Loan Default under the DIP Loan Documents, all rights and remedies provided for in this Interim Order and the DIP Loan Documents and take any or all actions provided therein, in each case with further notice, motion, application to, order of, or hearing before, this Court; and (f) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order and the DIP Loan Documents.

21.    <u>Rights and Remedies Upon DIP Loan Default.</u>  Immediately upon the occurrence and during the continuation of a DIP Loan Default under any of the DIP Loan Documents,

notwithstanding the provisions of Section 362 of the Bankruptcy Code, the DIP Lender may declare with written notice to the Debtor and filed with the Bankruptcy Court (any such declaration shall be referred to herein as a "Termination Declaration") (i) the unpaid principal amount of all outstanding DIP Loan Advances, all interest accrued and unpaid thereon, and all other DIP Obligations to be immediately due and payable, , (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtor to the extent any such commitment remains under the DIP Loan, (iii) the termination of the DIP Loan and the DIP Loan Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve-Out has occurred through the delivery of the Carve-Out Trigger Notice (as defined herein),. The Termination Declaration shall be filed with the Bankruptcy Court, delivered by email (or other electronic means) to counsel to the Debtor, counsel to the Prepetition Lender, and the U.S. Trustee (the date on which the Termination Declaration is delivered is referred to herein as the "Termination Date"). The Debtor or any other party in interest shall be entitled to seek an emergency hearing with this Court to be held within five (5) days after the Termination Date (the "Remedies Notice Period"), provided that the sole issue that the Debtor or any other party in interest may bring before this Court at any such emergency hearing is whether a DIP Loan Default has occurred and/or is occurring. Unless this Court orders otherwise, the automatic stay in the Case otherwise applicable to the DIP Lender shall automatically terminate at the end of the Remedies Notice Period without further notice or order, and the DIP Lender shall be entitled (without further order of or application or motion to this Court) to enforce all rights and remedies to satisfy outstanding obligations. The Debtor shall cooperate with the DIP Lender in the exercise of its rights and remedies (whether against the DIP Collateral or otherwise), shall not challenge or raise any objection to the exercise of such rights

and remedies except during the Remedies Notice Period, and shall waive any right to seek relief under the Bankruptcy Code, including under Section 105 thereof, to the extent that such relief would restrict or impair the rights and remedies of the DIP Lender set forth in this Interim Order and the DIP Loan Documents.  For the avoidance of doubt, no party in interest shall have the right to contest the enforcement of the rights and remedies set forth in this Interim Order or the DIP Loan Documents on any basis other than an assertion that no DIP Loan Default has occurred and is continuing.  This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.  The delay or failure to exercise rights and remedies under the applicable DIP Loan Documents or this Interim Order by the DIP Lender shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder or otherwise, unless such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Loan Documents and this Interim Order, as applicable.

22.     <u>Maintenance of DIP Collateral.</u> Until the indefeasible payment in full or other satisfaction acceptable to the DIP Lender of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Loan, the Debtor shall (x) insure the DIP Collateral as required under the DIP Loan Documents or the Prepetition Documents, (y) maintain the cash management system in effect as of the Petition Date, as modified by or in accordance with the Bankruptcy Code, applicable Operating Guidelines of the U.S. Trustee, or any order that may be entered by this Court and in accordance with the DIP Loan Documents with the consent of the DIP Lender, and (z) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents.

23.     <u>Binding Effect.</u>  Immediately upon entry, the terms and provisions of this Interim

Order shall inure to the benefit of the Debtor, the DIP Lender, and each of their respective

successors and assigns, and shall be binding upon the Debtor, the DIP Lender, the Prepetition

Lender, the Panache Parties, and any and all other creditors of the Debtor or other parties in interest

and their respective successors and assigns, including without limitation, any trustee hereafter

appointed for the estate of the Debtor, whether in the Case or any Successor Case.  Such binding

effect is an integral part of this Interim Order.   Further, upon entry of this Interim Order and the

advance of funds authorized by this Interim Order, the DIP Obligations shall constitute allowed

claims for all purposes in the Case and any Successor Case.

24.     <u>Survival.</u>  The terms and provisions of this Interim Order and any actions taken

pursuant hereto (including, but not limited to, the granting of the DIP Superpriority Claims) shall

survive the entry of any order: (a) converting the Case to a Chapter 7 case; or (b) dismissing the

Case or any Successor Case, and the terms and provisions of this Interim Order and any actions

taken pursuant hereto shall continue in full force and effect notwithstanding the entry of any such

order.  The terms and provisions of this Interim Order shall continue in the Case and any Successor

Case, and all liens and claims granted pursuant to this Interim Order shall maintain their priority

as provided by this Interim Order and the DIP Loan Documents until (x) in respect of the DIP

Loan, all of the DIP Obligations are indefeasibly paid in cash and discharged and all commitments

to extend credit under the DIP Loan are terminated.  If an order dismissing the Case or any

Successor Case is at any time entered, such order shall provide (in accordance with Sections 105

and 349 of the Bankruptcy Code) that: (a) the DIP Liens and the DIP Superpriority Claims granted

to and conferred upon the DIP Lender and the protections afforded to the DIP Lender pursuant to

this Interim Order and the DIP Loan Documents shall continue in full force and effect and shall

maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been paid and satisfied in full in cash (and that such DIP Liens, DIP Superpriority Claims and other protections shall, notwithstanding such dismissal, remain binding on all interested parties); and (b) to the maximum extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens, and the DIP Superpriority Claims.

25.    DIP Loan Documents / Amendments.  The Debtor and the DIP Lender are hereby authorized (without further notice, motion or application to, order of or hearing before, this Court) to enter into DIP Loan Documents provided however that such documents are consistent with, and do not conflict with, the provisions of this Interim Order.  The Debtor shall provide a copy of such DIP Loan Documents to kell.mercer@mercer-law-pc.com prior to execution by the Debtor, and to the extent the Panache Parties contend the DIP Loan Documents are inconsistent with, or conflict with, the provisions of this Interim Order, the Panache Parties may raise such positions at the Final Hearing.  The Debtor and the DIP Lender are authorized to amend, modify, or supplement any of the DIP Loan Documents if such amendment, modification, or supplement is (a) non-material and non-adverse to the Debtor and its bankruptcy estate, and (b) in accordance with the terms of this Interim Order or the DIP Loan Documents.  The Debtor shall file notice of the DIP Loan Agreement once resolved with the DIP Lender.  In the case of a material amendment, modification, or supplement to the DIP Loan Documents or that is adverse to the Debtor and its bankruptcy estate, the Debtor or the DIP Lender shall file and serve notice (which may be provided through email) of any such amendment, modification, or supplement to the U.S. Trustee and all creditors and parties in interest, which shall have five (5) business days from the date of such notice to object in writing to such amendment, modification, or supplement; provided, however, that any

forbearance from, or waiver of, a breach by the Debtor of a covenant, representation or any other agreement or a default or a DIP Loan Default, in each case under the DIP Loan Documents, shall not constitute a material amendment, modification or supplement.  If no objections are timely received by the Debtor or the DIP Lender, as applicable, during such five (5) day notice period, the Debtor and the DIP Lender are authorized and empowered to implement, in accordance with the terms of the DIP Loan Documents, such material amendment, modification or supplement to the DIP Loan Documents, without further notice, hearing or approval of this Court.  Any proposed material amendment, modification, or supplement to the DIP Loan Documents that is subject to a timely filed objection in accordance with this paragraph shall be subject to further order of this Court (which may be sought on an emergency or expedited basis).

26.     Insurance Policies. Upon entry of this Interim Order, on each insurance policy maintained by the Debtor which insures or consists of DIP Collateral: (i) the DIP Lender shall be, and shall be deemed to be, without any further action by or notice to any person, named as an additional insured; and (ii) the DIP Lender shall be, and shall be deemed to be, without any further action by or notice to any person, named as a loss payee. The Debtor is hereby authorized and, upon the written request of the DIP Lender, shall use commercially reasonable efforts to have the DIP Lender added as an additional insured and loss payee on each insurance policy maintained by the Debtor which in any way relates to the DIP Collateral.  The Debtor shall provide proof of such insurance to the U.S. Trustee in accordance with the U.S. Trustee guidelines for Chapter 11 bankruptcy cases.

27.     Protection Under Section 364(e) of the Bankruptcy Code. The DIP Lender has acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record of the Case, and in

accordance with Section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (a) the validity of any DIP Obligations owing to the DIP Lender incurred prior to the actual receipt by the DIP Lender, of written notice of the effective date of such reversal, modification, vacation or stay, or (b) the validity or enforceability of any DIP Loan Advances or other advances previously made or any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations owing to the DIP Lender. Notwithstanding any such reversal, modification, vacation or stay, incurrence of DIP Obligations, or incurrence of adequate protection obligations by the Debtor prior to the actual receipt by the DIP Lender, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Section 364(e) of the Bankruptcy Code, this Interim Order, and the DIP Loan Documents and the incurrence of DIP Obligations.

28. <u>Credit Bidding.</u> It shall constitute a "DIP Loan Default" under the DIP Loan Amendment if the DIP Lender is not granted the status of (or otherwise afforded the rights of) a qualified bidder (whether described as "Qualified Bidder" or similar term or not specifically defined) with the right to "credit bid" up to the full amount of the applicable outstanding DIP Obligations in connection with a sale of any portion of the DIP Collateral (including without limitation, a sale pursuant to Section 363 of the Bankruptcy Code and a sale included as part of any Chapter 11 plan subject to confirmation under Section 1129(b)(2)(A)(ii) - (iii) of the Bankruptcy Code or pursuant to Section 1191 of the Bankruptcy Code).

29.     <u>Discharge Waiver</u>.  The DIP Obligations and the obligations of the Debtor with respect to the liens and claims provided to the DIP Lender under this Interim Order shall survive (and not be discharged by) the entry of an order confirming a Chapter 11 plan in the Case, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash on or before the effective date of the confirmed Chapter 11 plan.  The Debtor shall not propose or support any Chapter 11 plan that is not conditioned upon the indefeasible payment in full in cash of all DIP Obligations upon the earlier of the effective date of the confirmed Chapter 11 plan or the DIP Loan Termination Date (as defined in the DIP Loan Agreement).  In no event shall a Chapter 11 plan alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Loan Documents unless agreed to by and among the Debtor and the DIP Lender, and all provisions contained in this Interim Order shall be deemed incorporated into, and not modified by, any Chapter 11 plan.

30.     <u>No Third Party Rights.</u> Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary other than the DIP Lender and the Prepetition Lender.

31.     <u>Limitations on Liability.</u>  In determining to make extensions of credit under the DIP Loan, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the DIP Loan Documents, or the Prepetition Documents, as applicable, none of the DIP Lender or any of their successors shall be deemed to be in control of the operations of the Debtor or any affiliate (as defined in the Bankruptcy Code) of the Debtor, or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor or any affiliate of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et*

31

*seq.,* as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order, the DIP Loan Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender, or any successor, of any liability for any claims arising from the postpetition activities of the Debtor, including any and all activities by the Debtor in the operation of its business or the administration of the Case.

32. <u>Findings of Fact and Conclusions of Law.</u> This Interim Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the date of the entry of the order for relief immediately upon entry hereof. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

33. <u>Entry of this Interim Order; Waiver of Stay.</u> Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

34. <u>Choice of Law; Jurisdiction.</u> The DIP Loan and DIP Loan Documents (and the rights and obligations of the parties thereto) shall be governed by, and construed and interpreted in accordance with, the laws of the State of Texas and, to the extent applicable, the Bankruptcy Code. This Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of, or in connection with, either the DIP Loan or the DIP Loan Documents.

35.     No Modification of Interim Order.  Until and unless the DIP Obligations have been indefeasibly paid in full in cash and all commitments to extend credit under the DIP Loan have been terminated, the Debtor irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Lender, (i) any modification, stay, vacatur, amendment, or extension of this Interim Order, or (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in Sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in the Case or any Successor Case, equal or superior to the DIP Superpriority Claims, other than the Carve-Out; (b) without the prior written consent of the DIP Lender, any order allowing use of Cash Collateral; or (c) without the prior written consent of the DIP Lender, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Loan Documents; .

36.     Controlling Effect of Interim Order.  To the extent any provision of this Interim Order conflicts with any provision of the Motion or any DIP Document, the provisions of this Interim Order shall control.

37.     Reservation of Rights of Prepetition Lender.  This Interim Order and the transactions contemplated hereby do not constitute a waiver of and shall be without prejudice to: (a) the rights of the Prepetition Lender to seek any relief with respect to the Debtor, to seek adequate protection, to move to vacate the automatic stay, to move for the appointment of a trustee or examiner, to move to dismiss or convert the Case, or to take any other action in the Case and to appear and be heard in any matter raised in the Case; and (b) any and all rights, remedies, claims, privileges, and causes of action which the Prepetition Lender may have against any non-Debtor party, including, without limitation, Prepetition Lender's rights, remedies, claims, privileges, and

causes of action under that certain Subordination and Intercreditor Agreement dated June 6, 2023 (the "ICA").  No provision of this Interim Order, the DIP Loan Documents, or the making of the DIP Loan shall be construed as a violation, breach, or default under the ICA; and any asserted violation, breach, or default arising under the ICA as a result of this Interim Order, the DIP Loan Documents, or the making of the DIP Loan is hereby deemed waived.

38.     Additional Reservation of Rights.  All interests, claims, causes of action, or objections asserted under or in connection with the Pending Action, and any and all rights of the Panache Parties to object to and/or oppose granting the Motion on a final basis, are entirely reserved.

39.     Final Hearing.  A further / final hearing to consider the Motion shall be held before the Court on **February 25, 2025, at 1:00 p.m.** (Central time).  The Debtor is responsible for notice.

###

## **EXHIBIT 1**

**(Initial Budget)**

**RIC (Austin), LLC**
*Interim DIP Budget*

| | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|
| | FCT | FCT | FCT | FCT | FCT |
| Week Ending: | **31-Jan** | **7-Feb** | **14-Feb** | **21-Feb** | **28-Feb** |
| **Beginning Cash Balance** | $  109,579 | $  522,542 | $  521,292 | $  440,869 | $  439,619 |
| *RECEIPTS* | | | | | |
| **Total Cash Receipts** | 1,500,000 | - | - | - | - |
| *DISBURSEMENTS* | | | | | |
| **PRESERVATION** | | | | | |
| Utilities | - | - | (20,235) | - | - |
| Security & Maintenance | (15,000) | (1,250) | (60,188) | (1,250) | (16,250) |
| Property Taxes | (732,473) | | | | |
| Other G&A | (1,000) | | | | (1,000) |
| Insurance | (44,352) | | | | |
| Assessment & Planning | (219,140) | - | - | - | (111,300) |
| **Total Preservation** | **(967,613)** | **(1,250)** | **(80,423)** | **(1,250)** | **(128,550)** |
| *Bankruptcy Costs* | | | | | |
| Munsch Hardt | (100,000) | | | | (150,000) |
| Harney Partners | (16,424) | | | | (50,000) |
| Blackwell & Duncan | | | | | (5,000) |
| Subchapter V Trustee | (3,000) | | | | (3,000) |
| DIP Lender Post-Petition Professional Fees & Expenses | | | | | |
| **Total Bankruptcy Costs** | **(119,424)** | **-** | **-** | **-** | **(208,000)** |
| **Net Cash Flow** | 412,963 | (1,250) | (80,423) | (1,250) | (336,550) |
| **Ending Cash Balance** | $  522,542 | $  521,292 | $  440,869 | $  439,619 | $  103,069 |
| **Total DIP Advances** | | | | | |
| Beginning Balance | - | 1,500,000 | 1,500,000 | 1,500,000 | 1,500,000 |
| Advances | 1,500,000 | - | - | - | - |
| Paydowns | - | - | - | - | - |
| **Ending Balance** | **$1,500,000** | **$1,500,000** | **$1,500,000** | **$1,500,000** | **$1,500,000** |