**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 24-10264-cgb |
| | § | |
| RIC (AUSTIN), LLC, | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | SUBCHAPTER V |

---

**PANACHE PARTIES' OBJECTION TO CONFIRMATION OF SUBCHAPTER V
DEBTOR'S FIRST AMENDED PLAN DATED JANUARY 23, 2026**
*Relates to ECF No. 256*

AFMN Investments, LLC ("AFMN"), Panache Development and Construction, Inc. ("Panache"), and Vesta Texas, LLC ("Vesta Texas") (collectively, the "Panache Parties") file this objection to confirmation of Subchapter V Debtor's First Amended Plan Dated January 23, 2026 (the "Plan") [ECF 256][1] filed by RIC (Austin), LLC (the "Debtor") and in support state as follows:

### I. OVERVIEW

1.      The Plan is procedurally, structurally, and substantively defective and cannot be confirmed. As an initial matter, the Plan is procedurally improper under either Subchapter V or traditional Chapter 11. The Debtor waived its right to seek confirmation of a non-consensual plan under section 1191(b) and the Court ordered the Debtor to de-select its Subchapter V election nearly seven months ago.[2] Nonetheless, the Debtor has improperly solicited and seeks to confirm the Plan on a non-consensual basis without an accompanying disclosure statement. Whether considered under Subchapter V or traditional Chapter 11, the Plan does not comply with the Court's prior orders in this case and the basic requirements of the Bankruptcy Code and is therefore unconfirmable under any theory.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

[2] ECF 28, 140.

2.      In addition to these threshold procedural defects, the Plan is structurally flawed because it presumes that Romspen will prevail in the pending Adversary Proceeding and only provides claim treatment that is consistent with that foretold result. To that end, the Plan allocates value as though the RMLP First Lien Claim is fully secured up to $34.5 million and treats all junior liens as unsecured. But in the Adversary Proceeding the Panache Parties have requested recharacterization and subordination of the RMLP First Lien Claim and RMLP Second Lien Claim, and if the Panache Parties prevail on those claims the entire waterfall changes, a contingency that is ignored in the Plan. The Debtor compounds the problem by scheduling the Equity Auction before resolution of the Adversary Proceeding, which will prevent any competitive bidding because of the uncertain capital structure of the Reorganized Debtor. No rational bidder would commit significant capital to an asset for which the senior lienholder and ultimate equity value is presently unknown.[3] In short, the Plan and the accompanying Equity Auction are built upon an assumed capital structure for the Reorganized Debtor that may be fundamentally wrong.

3.      The Plan also fails to satisfy multiple substantive requirements for confirmation under section 1129. Among other things, the Plan is premised upon the improper classification and separate solicitation of substantially similar claims in Classes 2 through 4 and 6 through 10, all of which constitute general unsecured claims that, absent coercive settlements, will share pro rata in a miniscule distribution through Class 11. The Debtor can articulate no reasonable business justification or valid bankruptcy purpose for separately classifying and disparately treating these unsecured claims, and has only done so in an attempt to gerrymander impaired accepting classes. The classification scheme violates the provisions of section 1122 and renders the Plan

---

[3] Viewed differently, rational bidders would ascribe a significant discount to the value of the assets being auctioned based on the uncertainty associated with the Reorganized Debtor's capital structure. Either way, the Equity Auction will not reflect post-Adversary Proceeding, post-confirmation market value.

unconfirmable. The Plan further violates the best interest of creditors test by transferring unencumbered causes of action with an alleged value exceeding $34 million to the Reorganized Debtor and its new equity owner without compensating unsecured creditors for that value.

4.      Finally, the Plan fails to satisfy the cramdown requirements of section 1129(b) because it unfairly discriminates against the Panache Parties and violates the absolute priority rule. In an attempt to garner votes in favor of the Plan, the Debtor provides vastly superior treatment to favored creditors in Classes 6 through 10 while relegating the Panache Parties a pro rata recovery in Class 11, despite the fact that such claims are of equal priority and legal right. The Debtor cannot establish a valid justification for this disparate treatment among similarly situated creditors, and the Plan therefore unfairly discriminates in violation of section 1129(b)(1).

5.      Likewise, the Plan violates the absolute priority rule by permitting Reomaster, the Debtor's controlling shareholder, to receive 100% of the equity in the Reorganized Debtor without submitting the equity interests to a realistic market check. Because the Equity Auction is scheduled prior to the determination of the Adversary Proceeding with limited marketing, it is heavily tilted in favor of the existing equity owner and designed to avoid any competitive bidding. The results of the Equity Auction will thus not reflect the true market value of the equity in the Reorganized Debtor. The Debtor thus cannot satisfy the new value exception to the absolute priority rule, and the Plan is not fair and equitable under section 1129(b)(2).

6.      In sum, the Plan is a procedurally improper, structurally unsound, and substantively defective attempt to cement Romspen's preferred outcome in this case while sidestepping the Court's prior orders and the protections afforded to creditors under the Bankruptcy Code. It is not a legitimate reorganization proposal designed to maximize value for the estate and treat similarly situated creditors fairly. Rather, it is a litigation-driven construct that presumes victory in the

Adversary Proceeding, gerrymanders accepting classes, diverts estate value away from unsecured creditors, and orchestrates a premature and illusory market test to preserve insider control. For these reasons, and as set forth more fully below, the Plan cannot be confirmed.

## II. FACTUAL & PROCEDURAL BACKGROUND

**A.    The Debtor Waived its Right to Confirm a Non-Consensual Subchapter V Plan and Has Been Ordered to Proceed as a Traditional Chapter 11 Debtor Under Section 1129**

7.    On September 8, 2024, the Court entered an agreed order for relief in this case under Subchapter V of Chapter 11 (the "Agreed Order for Relief"),[4] which resolved pending disputes between the Debtor and Panache Parties regarding, among other things, the Debtor's eligibility for Subchapter V.[5] Under the Agreed Order for Relief, the Debtor was permitted to proceed under Subchapter V but expressly waived any right to seek to confirm a non-consensual plan under section 1191(b).[6] In short, to resolve the dispute concerning its eligibility for Subchapter V, the Debtor agreed – and the Court ordered – that the Debtor could not seek to confirm a non-consensual Subchapter V plan in this case.[7]

8.    The Agreed Order for Relief further provided that, in the event the Debtor had not confirmed a consensual Subchapter V plan within the following six months, the Debtor would be required to deselect its Subchapter V election and proceed as a traditional Chapter 11 debtor, and that exclusivity would terminate upon deselection.[8]

---

[4] ECF 28.

[5] *See* ECF 14, 17, 23.

[6] EFC 28 at p. 3 (providing that the Debtor "waives any and all rights in this bankruptcy case to seek to confirm a plan under subsection 1191(b) . . . and/or utilizing the requirements, terms, conditions, and provisions [of] subsections 1191(c), (d), and (e)").

[7] *Id*.

[8] *Id*. (requiring the Debtor "deselect its [S]ubchapter V election and . . . be a debtor under Chapter 11" without the exclusive right to file and confirm a plan).

9.      On February 21, 2025, the Court entered a further agreed order (the "Agreed Exclusivity Order") modifying the Agreed Order for Relief and extending the Debtor's exclusive period and ability to seek confirmation of a consensual Subchapter V plan to July 15, 2025.[9] The Agreed Exclusivity Order required that, if a consensual plan had not been confirmed under section 1191(a) by that date, the Debtor "shall" deselect its Subchapter V election and proceed as a regular Chapter 11 debtor.[10]

10.      The deselection language in the Agreed Exclusivity Order was mandatory and self-effectuating and required no action from the Panache Parties or other creditors to trigger the Debtor's obligation to terminate its Subchapter V election.[11] To date, however, the Debtor has failed to deselect its Subchapter V election as previously ordered by the Court and is continuing to proceed under Subchapter V in violation of the Court's prior orders.

**B.     The Debtor Filed and Solicited the Plan in Violation of the Court's Prior Orders and the Bankruptcy Code**

11.      Despite waiving its right to seek confirmation of a non-consensual Subchapter V plan and being ordered by this Cout to "deselect" its Subchapter V election and proceed to confirmation, if at all, under section 1129(a), the Debtor filed and solicited the Plan under Subchapter V of the Bankruptcy Code.[12] The Debtor's filing and solicitation of the Plan violates both the Agreed Order for Relief – by seeking confirmation of a non-consensual Subchapter V plan – and the Agreed Exclusivity Order – by proceeding to confirmation under Subchapter V rather than section 1129.

---

[9] ECF 140.

[10] *Id*. at 4.

[11] *Id*.

[12] ECF 256.

**C.      In Connection with the Improper Solicitation of the Plan, the Debtor Scheduled an Equity Auction Heavily Tilted in Favor of Romspen**

12.      Under the Plan, the Debtor purports to schedule the Equity Auction on March 12, 2026, at which the equity interests in the Reorganized Debtor will be auctioned and sold.[13] Concurrent with the solicitation of the Plan, the Debtor also solicited participation in the Equity Auction to an unknown number of parties. The Equity Auction is scheduled to occur prior to confirmation and before the resolution of the pending Adversary Proceeding between the Panache Parties and the Romspen Parties,[14] the outcome of which will determine the amount, secured status, and priority, of tens of millions of dollars in secured debt to be treated under the Plan. If permitted to proceed as scheduled, the Equity Auction will take place at a time when the Debtor has improperly solicited an unconfirmable plan in violation of the Court's orders, creating significant confusion regarding the direction of this case, the assets being auctioned, and the Debtor's ultimate ability to exit bankruptcy.

13.      Moreover, the Debtor has not sought approval of any marketing or bidding procedures, and it cannot demonstrate that the solicitation of the Plan and concurrent Equity Auction at this stage of the case – with significant uncertainty regarding the confirmability of the Plan and the Reorganized Debtor's ultimate capital structure – comply with its obligation to maximize value. Put simply, the Debtor's rushed and limited marketing of the equity interests to be issued under an unconfirmable plan will chill bidding activity and limit any value that might be derived in a fulsome process against a more certain backdrop.

---

[13] ECF 256 at p. 15, § 2.5.2.

[14] Romspen Mortgage Limited Partners ("Romspen") and Romspen Reomaster Holdings, Inc. ("Reomaster") (collectively, the "Romspen Parties").

### III. THE PLAN VIOLATES THIS COURT'S PRIOR ORDERS

14.     The Plan violates both the Agreed Order for Relief and the Agreed Exclusivity Order and cannot be confirmed on that basis alone. In the Agreed Order for Relief, the Court ordered that the Debtor could not seek confirmation of a plan on a non-consensual basis under section 1191(b).[15] By filing and soliciting the Plan, the Debtor seeks to do exactly that. The Plan contains multiple impaired classes of claims that will expressly reject or are deemed to reject.[16] As a result, the Plan does not satisfy section 1129(a)(8) and therefore cannot be confirmed under section 1191(a). The Debtor is therefore necessarily limited to seeking confirmation under section 1191(b) in violation of the Agreed Order for Relief.

15.     The Debtor has also violated the Court's Agreed Exclusivity Order by seeking confirmation of the Plan under Subchapter V rather than pursuing confirmation of a plan under section 1129. Proceeding under section 1129 requires, among other things, that the Debtor comply with the disclosure requirements of section 1125(b), obtain an impaired accepting class as required by section 1129(a)(10), and comply with the cramdown requirements of section 1129(b). Because the Debtor's solicitation of the Plan violates both this Court's orders and the basic requirements of the Bankruptcy Code, the Amended Plan is facially unconfirmable.

### IV. THE PLAN DOES NOT SATISFY THE REQUIREMENTS OF SCTION 1129(a)

**A.     The Plan Does Not Comply with the Applicable Provisions of the Bankruptcy Code as Required by Section 1129(a)(1)**

16.     Section 1129(a)(1) requires that, to be confirmed, a plan must comply with the applicable requirements of the Bankruptcy Code, including the classification requirements of

---

[15] EFC 28 at p. 3

[16] At a minimum, this includes the Panache Parties in Classes 3, 4, and 12, and may include additional classes.

sections 1122.[17] The Plan's classification scheme violates section 1122 by improperly segregating substantially similar unsecured claims into separate classes for the sole purpose of gerrymandering accepting classes and providing outsized recoveries to favored creditors.

17.     The Plan's classification scheme violates section 1122 by separately classifying claims in Classes 2, 3, 4, 6, 7, 8, and 9 (the "Junior Lien Classes"), which (according to the Debtor) are fully unsecured under section 506(a) and whose recovery – absent coercive settlements with Classes 6 through 9 – is shared pro rata in Class 11. Based on that separate classification, the Debtor solicited votes from the Junior Lien Classes in their respective classes, and not as members of Class 11. In other words, despite their recoveries being lumped in with Class 11, the Junior Lien Classes' votes were not solicited as members of that class, artificially fragmenting creditors' votes from the class in which they will actually participate. The absurdity of the Plan's classification scheme is best illustrated by the fact that no members of Class 11 were solicited, because all potential class members were either classified individually in the Junior Lien Classes or included as administrative convenience claims in Class 10. The Debtor cannot simultaneously argue that these claims are economically identical for purposes of recovery while insisting they are legally distinct for purposes of voting.

18.     "[T]he law in this Circuit is clear. Substantially similar claims must be classified together unless some reason, other than gerrymandering, exists for separating them."[18] Because they are all fully unsecured, the claims in the Junior Lien Classes are substantially similar, and the sole reason for separately classifying and soliciting votes in those classes is the artificial creation of potentially impaired accepting classes under section 1129(a)(10). This segregation of

---

[17] *In re Multiut Corp.*, 449 B.R. 323, 333 (Bankr. N.D. Ill. 2011).

[18] *In re Heritage Org., L.L.C.*, 375 B.R. 230, 298 (Bankr. N.D. Tex. 2007) (citing *In re Greystone III J.V.*, 995 F.2d 1274, 1277 (5th Cir. 1991))

substantially similar claims into separate classes for voting purposes violates the Fifth Circuit's edict concerning section 1122: "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."[19]

19.     The Debtor's separate classification of administrative convenience claims in Class 10 to gerrymander an impaired accepting class is also improper. Section 1122(b) only permits the separate classification of administrative convenience claims "as reasonable and necessary for administrative convenience."[20] "'[N]ecessary' in the context of Section 1122(b) means something more than just tending to ease the administrative burden."[21] "Treating the unsecured claims as members of the same class must be truly burdensome before a bankruptcy court should consider deviating from the general rule and classifying them separately."[22]

20.     "Generally, an administrative convenience class is one where the claims are so small in amount and large in number as to make dealing with them burdensome."[23] Recognizing that there is no undue burden in administering few claims, courts have frequently rejected the separation of a small number of claims into an administrative convenience class, especially when such separate classification serves the dual purpose of creating an impaired accepting class.[24]

---

[19] *Greystone*, 995 F.2d at 1279; *see also In re AOV Indus., Inc.*, 792 F.2d 1140, 1151 (D.C. Cir. 1986) ("[L]ogistics and fairness dictate consolidation rather than proliferation of classes."); *Scherk v. Newton*, 152 F.2d 747, 751 (10th Cir. 1945) ("All creditors of equal rank with claims against the same property should be placed in the same class.").

[20] *In re Autterson*, 547 B.R. 372, 395 (Bankr. D. Colo. 2016).

[21] *In re S & W Enters.*, 37 B.R. 153, 162 (Bankr. N.D. Ill. 1984).

[22] *Id.*

[23] *In re Tucson Self–Storage, Inc.*, 166 B.R. 892, 898 (9th Cir. B.A.P. 1994); *see also Rocky Mountain*, 2014 WL 1338292, at *15 ("[C]onvenience classes are generally used by a plan proponent to clear out numerous small claims soon after plan confirmation.").

[24] *Autterson*, 547 B.R. at 396; *In re New Bride Missionary Bapt. Ch.*, 509 B.R. 85, 88 (Bankr. E.D. Mich. 2014); *In re Rocky Mountain Land Co. LLC*, 2014 WL 1338292, at *15 (Bankr. D. Colo. Apr. 3, 2014) (five claims); *In re National/Northway L.P.*, 279 B.R. 17, 23 (Bankr. D. Mass. 2002).

21.    Here, Class 10 consists of nine claims totaling $74,530.86, which constitute all unsecured claims other than the unsecured claims of the Junior Lien Classes. Given the limited number of claims at issue here and the simple recovery provided to general unsecured creditors, the Debtor cannot meet its burden to establish that the separate classification of administrative convenience claims is Class 10 is either necessary or reasonable.[25] And while the balloting results are not in, it is foreseeable that Class 10 could be the Debtor's only impaired accepting class. Class 10 is thus not merely unnecessary — it is potentially the sole mechanism by which the Debtor might conjure the votes necessary to confirm the otherwise unconfirmable Plan. The Debtor's improper creation of an administrative convenience class under section 1122(b) therefore violates the requirement of section 1129(a)(1).[26]

## B.    The Debtor Has Not Complied with the Applicable Provisions of the Bankruptcy Code as Required by Section 1129(a)(2)

22.    Section 1129(a)(2) requires that a plan proponent comply with the requirements of the Bankruptcy Code, which courts have interpreted to include the disclosure and solicitation requirements of section 1125.[27] Section 1125(b) prohibits a plan proponent from soliciting acceptances of a plan without including a court-approved disclosure statement containing adequate information.

23.    As noted above, the Agreed Exclusivity Order required the Debtor to de-select its Subchapter V election nearly seven months ago. Due to the deselection, the Debtor can no longer be a Subchapter V debtor and must comply with the usual Chapter 11 requirements, including the

---

[25] The legislative history of 11 U.S.C. § 1122(b) reflects that the intent was to permit the debtor avoid having to solicit acceptances from a multitude of small unsecured claimholders by simply paying them in full on the effective date. *In re Hanish, LLC*, 570 B.R. 4, 17 (Bankr. D.N.H. 2017) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 118 n. 26 (1978)). This statutory purpose is not served by creating an impaired claims of few claims, which must still be solicited.

[26] *Autterson*, 547 B.R. at 396; *see also Greystone*, 995 F.2d at 1278 n. 4.

[27] *In re Cypresswood Land Partners, I*, 409 B.R. 396, 424 (Bankr. S.D. Tex. 2009).

requirements of section 1125(b). By failing to comply with the Agreed Exclusivity Order and soliciting the Plan without approval of an accompanying disclosure statement, the Debtor has not satisfied the requirements of section 1129(a)(2).[28]

**C.     The Plan Has Not Been Proposed in Good Faith as Required by Section 1129(a)(3)**

24.     Under section 1129(a)(3), a plan must be proposed in good faith. "Good faith" is not defined in the Bankruptcy Code and is determined in light of the totality of the circumstances surrounding the plan.[29] In considering whether a plan is proposed in good faith, courts have considered (1) whether the proposed plan promotes a result consistent with the Bankruptcy Code's objectives; (2) whether the proposed plan has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected; and (3) whether the debtor exhibited fundamental fairness in dealing with its creditors.[30]

25.     The Plan fails to satisfy this requirement because it provides selectively favorable treatment to the Romspen Parties, certain of the Junior Lien Classes, and administrative expense creditors while providing little to no return to the Panache Parties. The Plan accomplishes this result by improperly classifying similar claims in order to gerrymander votes under section 1129(a)(1). This discriminatory classification and treatment independently violates sections 1122, 1129(a)(1), and 1129(b). The Plan also seeks to lock in an insider's right to purchase the equity in the Reorganized Debtor an artificially impaired price that is determined before this Court decides the Adversary Proceeding, and as discussed below transfers allegedly valuable causes of action away from creditors to the Reorganized Debtor without compensating creditors.

---

[28] *See In re Trans Max Techs., Inc*., 349 B.R. 80, 86 (Bankr. D. Nev. 2006) ("It is of course beyond doubt that a plan may not be confirmed if the proponent solicits votes before approval and distribution of a disclosure statement.").

[29] *In re Sun Country Dev., Inc*., 764 F.2d 406, 408 (5th Cir. 1985).

[30] *In re Trinity Fam. Prac. & Urgent Care PLLC*, 661 B.R. 793, 813 (W.D. Tex. 2024).

26.     Similarly, the Plan seeks to undermine the Panache Parties' claims in Adversary Proceeding, before the Court rules, by providing the Romspen Parties allowed claims and substantially all the Plan's value. While the Plan pays lip service with the boiler plate statement "Subject to the Adversary Proceeding . . .", there is no effort to provide alternate contingent paths that effectuate the Adversary Proceeding's various possible outcomes, most of which are directly contrary to the Plan's fundamental treatment structure.[31] The Plan cannot predetermine the outcome of claims that due process requires to be resolved in the Adversary Proceeding.[32]

27.     When viewed in light of the totality of the circumstances, including the classification and treatment of the Panache Parties under the Plan, the Debtor's attempt to benefit insiders, and the Plan's effort to undermine the Adversary Proceeding, the Plan does not satisfy the good faith requirement of section 1129(a)(3) because it is inconsistent with the Bankruptcy Code's objectives and reflects a fundamental unfairness in dealing with creditors.[33]

**D.     The Plan Does Not Satisfy the Best Interest of Creditors Test Under Section 1129(a)(7)**

28.     The Plan does not satisfy the best interest of creditors test under section 1129(a)(7). Specifically, the Plan fails to administer allegedly valuable claims and causes of action for the benefit of creditors. In the Plan, the Debtor estimates that it holds causes of action "with a face value of thirty-seven million dollars ($37,000,000.00) or more."[34] While the Panache Parties dispute the Debtor's allegation it has putative causes of action against the Panache Parties – any

---

[31] Likewise, the Plan muddies the treatment and allowance of the Panache Parties' claims by providing that those claims (Classes 3 and 4) are not allowed, in contravention of section 502(a), and only providing treatment for those claims "[t]o the extent later Allowed." Plan at § 2.2(a).

[32] Fed. R. Bankr. P. 7001(2); *In re Mansaray-Ruffin*, 530 F.3d 230, 238-39 (3d Cir. 2008); *Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 903 (4th Cir. 1995).  This also renders the Plan unconfirmable under section 1129(a)(1).

[33] *See, e.g., In re Radco Prop., Inc.*, 402 B.R. 666, 673-75 (Bankr. E.D.N.C. 2009) (plan that violated multiple code provisions not proposed in good faith).

[34] Plan at § 1.5

causes of action the Debtor does have are presumably unencumbered with the net recoveries available for distribution to creditors, yet the Plan inexplicably reserves them for the benefit of the Reorganized Debtor without compensating unsecured creditors.

29.     In a hypothetical Chapter 7, the value of any alleged causes of action would be available for distribution to unsecured creditors.[35] Under the Plan, however, the value of all causes of action is gifted to the Reorganized Debtor and its new equity owners for no consideration. The Plan provides no mechanism to monetize or distribute that value to unsecured creditors prior to vesting those claims in the Reorganized Debtor. This is precisely the type of value leakage the best interest of creditors test is designed to prevent. By failing to administer these allegedly valuable assets and distribute their value to unsecured creditors, the Plan violates the best interest of creditors test and cannot be confirmed.[36]

**E.      Impaired Classes Have Not Accepted the Plan as Required Under Section 1129(a)(8)**

30.     The Plan does not satisfy the requirements of section 1129(a)(8), which requires acceptance by all impaired classes subject to the cramdown provisions of section 1129(b). Although the Debtor has not produced a balloting report as of the date of this objection, at a minimum Classes 3, 4, and 12 rejected the Plan. The Debtor therefore cannot satisfy the requirements of section 1129(a)(8) and, as discussed below, does not meet the requirements for cramdown under section 1129(b).

**F.      The Debtor Cannot Satisfy the Impaired Accepting Class Requirement in Section 1129(a)(10)**

31.     Section 1129(a)(10) requires that a plan must be accepted by at least one class of impaired claims without counting the acceptances of insiders. As set forth above, the Junior Lien

---

[35] *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 181 (Bankr. D.N.J. 2010).

[36] *Id.*

Classes and administrative convenience claims in Class 10 are substantially similar and could have been classified together, and the only reason those claims were separately classified is gerrymander impaired accepting classes. The Debtor cannot meet its burden to justify separately classifying the claims in those classes.[37] Subject to the final balloting results, the Panache Parties submit that the Debtor will be unable obtain an impaired accepting class that meets the requirements of section 1129(a)(10). In the event the balloting results yield an impaired accepting class within the meaning of section 1129(a)(10), the Plan still cannot be confirmed because the Debtor gerrymandered the vote as discussed in section IV.A. above.

**G.      The Plan is Not Feasible as Required by Section 1129(a)(11)**

32.      Section 1129(a)(11) codifies the feasibility requirement and requires that confirmation of the plan is not likely to be followed by liquidation or the need for further financial reorganization, unless such liquidation or reorganization is proposed in the plan. To meet the feasibility standard, the Debtor must provide reasonable assurance of commercial viability and evidence of a reasonable probability of success.[38]

33.      As presented, the Plan leaves open two contingencies that call into question its feasibility. First, the Plan contains no operating projections for the Reorganized Debtor, and provides only that the Equity Auction will generate sufficient excess proceeds to fund one year of post-confirmation operating expenses.[39] Absent such projections, which would normally be included in a disclosure statement, it is impossible for creditors and the Court to evaluate the Reorganized Debtor's ability to fund its post-confirmation operating expenses.

---

[37] "If a creditor objects to the classification scheme on gerrymandering grounds, most courts require the plan proponent to justify the classification." *Autterson*, 547 B.R. at 397 (quoting *Rocky Mountain Land*, 2014 WL 1338292 at *15).

[38] *Matter of T–H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997).

[39] Plan at § 1.4.

34.     Second, the Plan provides that the RMLP First Lien Claim will mature on December 31, 2028.[40] To demonstrate that the Plan is feasible, the Debtor must establish that the Reorganized Debtor "will have sufficient equity to attract a refinancer or, if not, whether [it] can sell the property and fully pay-off" RMLP.[41] The Court may only confirm the Plan if the Debtor makes the requisite showing by a preponderance of the evidence.[42]

35.     Third, the Plan is not feasible because it presumes the outcome of litigation concerning the amount and priority of the RMLP First Lien Claim, the RMLP Second Lien Claim, the AFMN Third Lien Claim, and the Panache Fourth Lien Claim. The Plan allocates the full value of the Debtor's real property to the RMLP First Lien Claim, but the RMLP First Lien Claim and RMLP Second Lien Claim are subject to recharacterization or subordination in the Adversary Proceeding, and the Plan makes no provision for the allocation of value to the AFMN Third Lien Claim or Panache Fourth Lien Claim in the event that the RMLP First Lien Claim and RMLP Second Lien Claim are recharacterized or subordinated. As a result, the treatment provided to creditors under the Plan is fully dependent upon the Romspen Parties prevailing in the Adversary Proceeding. However, a plan is <u>not</u> feasible if it "hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely."[43] Because the Plan's treatment scheme hinges upon the uncertain outcome of the Adversary Proceeding, the Plan is not feasible.

---

[40] Plan at § 2.2.

[41] *In re Geijsel*, 480 B.R. 238, 260 (Bankr. N.D. Tex. 2012) (citing *T–H New Orleans*, 116 F.3d at 802).

[42] *Id*. at 257.

[43] *In re W.R. Grace & Co*., 729 F.3d 332, 348–49 (3d Cir. 2013).

## V. THE PLAN DOES NOT SATISFY THE REQUIREMENTS OF SECTION 1129(b)

### A.    Cramdown Standard

36.    Under section 1129(b)(1), a plan that does not satisfy section 1129(a)(8) can be confirmed over the objection of an impaired class only if (i) the plan does not unfairly discriminate against that class and (ii) the plan is fair and equitable. Courts have described the requirements of section 1129(b) in terms of horizontal and vertical fairness among classes. "The Bankruptcy Code does not define unfair discrimination, but it is designed to protect against horizontal discrimination in the same way that the absolute priority rule prevents against nonconsensual vertical discrimination."[44] "In other words, the unfair discrimination test assures fair treatment among classes of the same priority level while the fair and equitable requirement ensures fair treatment among classes of different priority levels."[45] The Plan in this case fails both requirements.

### B.    The Plan Unfairly Discriminates Against the Panache Parties in Favor of Creditors of Equal Priority

37.    The Plan unfairly discriminates against AFMN (Class 3) and Panache (Class 4) by providing superior treatment to creditors of equal priority who hold substantially similar claims. Specifically, the Plan provides that Classes 3 and 4 will share pro rata in the distribution to holders of claims in Class 11, while also providing that Classes 6 through 9 with the option to receive up to 90% of their undisputed claims and 75% of their disputed claims. The Plan further provides that unsecured creditors in Class 10 will receive 90% of their claims. As discussed above, the Junior Lien Claims and administrative convenience claims in Class 10 are all substantially similar in both priority and legal rights, and the separate classification of those claims violates section 1122. By

---

[44] *In re SunEdison, Inc.*, 575 B.R. 220, 226 (Bankr. S.D.N.Y. 2017).

[45] *Id.*

providing materially worse treatment to AFMN and Panache than to Classes 6 through 10, the Plan unfairly discriminates against AFMN and Panache.

38.     Under section 1123(a)(4), a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." "A dissenting class must . . . receive treatment that allocates value to the class consistent with the treatment afforded other classes with similar claims."[46] "In determining whether discrimination of claims are unfair, courts consider, among other factors, whether there is a reasonable basis for the for the discrimination and whether the debtor can confirm and consummate a plan without the discrimination.[47]

39.     Both of these considerations demonstrate that the Plan unfairly discriminates against AFMN and Panache while providing far superior treatment to Classes 6 through 10. The Debtor can provide no reasonable business justification for relegating AFMN and Panache to share in the de minimis distribution in Class 11 while paying Classes 6 through 10, which the Debtor contends are of equal priority to AFMN and Panache, up to 90% of their claims. As demonstrated above, the sole basis for this disparate treatment is to gerrymander impaired accepting classes of claims, without which the Debtor could not confirm the Plan. Because there is no reasonable basis for the discriminatory treatment of AFMN and Panache, the Plan unfairly discriminates against those parties in violation of section 1129(b)(1).

**C.     The Plan is Not Fair and Equitable Because it Violates the Absolute Priority Rule**

40.     The "fair and equitable" requirement of section 1129(b)(1) incorporates the absolute priority rule, which in this case requires that no holder of a claim or interest junior to

---

[46] *In re Mangia Pizza Investments, LP*, 480 B.R. 669, 701 (Bankr. W.D. Tex. 2012); *see also In re Mortg. Inv. Co. of El Paso, Tex.*, 111 B.R. 604, 614 (Bankr. W.D. Tex. 1990).

[47] *Mangia*, 480 B.R. at 701.

AFMN and Panache receive or retain any interest or property under the Plan unless AFMN and Panache's claims are paid in full. Subject to the results of the premature and structurally flawed Equity Auction, Reomaster, the Debtor's controlling equity owner, will receive 100% of the equity interests in the Reorganized Debtor for an initial bid of $5.4 million.[48] This treatment violates the absolute priority rule unless the Debtor can establish that the Equity Auction satisfies the new value exception to that rule.[49]

41. "The new value corollary permits a debtor's old equity holders – in exchange for a new capital contribution – to retain their equity in the company, even as creditors are not paid in full."[50] However, to avoid eviscerating the absolute priority rule, the new value exception must be carefully policed.[51] New value plans are "not merely a mechanism for existing equity holders to buy back, at bargain prices, their ownership interest in the reorganized debtor,"[52] and Supreme Court guidance requires that new value plans be subject to a market test.[53]

42. The Debtor has attempted to satisfy this requirement by scheduling the Equity Auction. However, a new value plan premised upon an auction process that is tilted in favor of the controlling equity owner "unquestionably runs afoul of section 1129(b)'s fair and equitable

---

[48] Because the Causes of Action will revest in the Debtor, Reomaster will also receive the value of those Causes of Action in violation of the absolute priority rule.

[49] "The new value exception is the proposition that 'the objection of an impaired senior class does not bar junior claim holders from receiving or retaining property interests in the debtor after reorganization, if they contribute new capital in money or money's worth, reasonably equivalent to the property's value, and necessary for successful reorganization of the restructured enterprise.'" *In re Latam Airlines Grp. S.A.*, 620 B.R. 722, 801 (Bankr. S.D.N.Y. 2020) (quoting *Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 (1999)).

[50] *Id.*

[51] *See In re Wagle, LLC*, 570 B.R. 725, at 728 (Bankr. W.D. Pa. 2017) ("A 'rigorous showing' as to these requirements is necessary in order to ensure that a debtor's equity holders do not eviscerate the absolute priority rule by means of a contrived infusion.").

[52] *Mangia*, 480 B.R. at 699 (quoting *MICO*, 111 B.R. at 620).

[53] *North LaSalle*, 526 U.S. at 458 ("Whether a market test would require an opportunity to offer competing plans or would be satisfied by a right to bid for the same interest sought by old equity is a question we do not decide here. It is enough to say, assuming a new value corollary, that plans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within the prohibition of § 1129(b)(2)(B)(ii).").

requirement."[54] "Only a fair and competitive auction can expose the equity to the market and thereby protect against the dilution of creditors' rights by inadequate contributions by the current owners."[55]

43.     Here, the proposed Equity Auction is not designed to foster competitive bidding. As an initial matter, the Debtor has not sought approval of sale and bidding procedures, there is no evidence that the equity in the Reorganized Debtor has been adequately marketed, and the timeline for the proposed sale is insufficient to permit interested parties to conduct sufficient diligence. Importantly, the issuance of the equity being auctioned is also premised upon the confirmation of an improperly solicited and patently unconfirmable plan that violates this Court's prior orders. The lack of any certainty in the Debtor's ability to actually deliver the assets being auctioned will chill, and likely eliminate, any legitimate bidding activity by third parties, making the market check illusory. In sum, the Equity Auction, as currently proposed, is subject to multiple contingencies, including the confirmation of the Plan, and third-party bidders cannot be expected to devote the time and effort necessary to bid on an uncertain, contingent asset.

44.     Similarly, even if the Debtor could confirm the Plan, the holders, priority, amount, and structure of the reorganized debtor's post-confirmation secured debts are all contingent on the outcome of the Adversary Proceeding. The Adversary Proceeding seeks to disallow, recharacterize, and subordinate Romspen's secured claims. It is premature to sell equity in the Reorganized Debtor when the buyer can have no certainty as to who the secured creditors will be or the amount of secured debt those creditors will hold. The value of the Reorganized Debtor's equity cannot reasonably be assessed by bidders until *after* the Adversary Proceeding is decided; therefore, any

---

[54] *In re Wisconsin & Milwaukee Hotel LLC*, 2026 WL 31366, at *6 (E.D. Wis. Jan. 5, 2026).

[55] *Id.* (quotations omitted).

auction that occurs before the Court rules on the Adversary Proceeding will not reflect the true market value of the equity in the Reorganized Debtor.

45.    The Debtor "bear[s] the burden of showing that the new money offered is the most and best reasonably obtainable after some 'market testing' in order to cram down over the objections of a nonconsenting class of unsecured creditors."[56] This requires. "at a minimum, demonstration of a systematic effort designed to 'market test' the deal."[57] The market test in this case was illusory; no legitimate third party bidder can reasonably be expected to bid in the Equity Auction under the circumstances. As a result, the Debtor cannot meet its burden to establish that the Equity Auction satisfies the new value exception to the absolute priority rule, and the Plan therefore is not fair and equitable under section 1129(b).

## VI. AFMN MAKES A CONTINGENT SECTION 1111(b) ELECTION

46.    AFMN hereby provides notice of its contingent election under section 1111(b)(2) to have its claim treated as fully secured.  In the event the Adversary Proceeding results in AFMN holding an allowed, partially secured claim under section 506(a), such claim must be treated as fully secured in accordance with section 1111(b)(2).

## VII. CONCLUSION & PRAYER

47.    The litigation-driven Plan is designed to engineer acceptance, entrench insider control, and deprive the Panache Parties of the protections afforded to them by statute and prior order of this Court. The law does not permit such a result. The Panache Parties therefore request that confirmation be denied and that the Court grant such other and further relief as is just and proper.

---

[56] *In re NNN Parkway 400 26, LLC*, 505 B.R. 277, 283 (Bankr. C.D. Cal. 2014).

[57] *Id*.

Date: February 20, 2026.          Respectfully submitted,

*/s/ John D. Gaither*
Jason M. Rudd, Tex. Bar No. 24028786
John D. Gaither, Tex. Bar. No. 24055516
Catherine A. Curtis, Tex. Bar No. 24095708
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Phone: (214) 692-6200
Email: jason.rudd@wickphillips.com
       catherine.curtis@wickphillips.com

***COUNSEL FOR PANACHE DEVELOPMENT &
CONSTRUCTION, INC., AFMN INVESTMENTS,
LLC,** AND **ADAM ZARAFSHANI***

*/s/ B. Russell Horton*
B. Russell Horton, Tex. Bar No. 10014450
**GEORGE BROTHERS KINCAID & HORTON, LLP**
114 W 7th St., Suite 1100
Austin, Texas 78701
Phone: (512) 495-1400
Email: rhorton@gbkh.com

***COUNSEL FOR AFMN INVESTMENTS, LLC***

*/s/ J. Casey Roy*
J. Casey Roy, Tex. Bar No. 00791578
**KANE RUSSELL COLEMAN LOGAN PC**
401 Congress Avenue, Suite 2100
Austin, Texas 78701
Phone: (512) 487-6572
Email: croy@krcl.com

***COUNSEL TO VESTA TEXAS, LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2026, a copy of the foregoing document was served electronically on all parties registered to receive notice through the Court's ECF service, and by first class mail on parties listed on the attached service list.

*/s/ John D. Gaither*
John D. Gaither

Label Matrix for local noticing
0542-1
Case 24-10264-cgb
Western District of Texas
Austin
Mon Nov 17 14:39:06 CST 2025

RIC (Austin) LLC
c/o Gregory S. Milligan, CRO
8911 N. Capital of Texas Highway
Ste 2120
Austin, TX 78759-7200

U.S. BANKRUPTCY COURT
903 SAN JACINTO, SUITE 322
AUSTIN, TX 78701-2450

ACM Services, LLC
P.O. Box 1208
Taylor, TX 76574-6208

AFMN Investments, LLC
c/o Russ Horton
114 W 7th Street Ste 625
Austin, TX 78701-3010

AREM
PO Box 170191
Austin, TX 78717-0012

ATX Alarm Company
820 Marbella Vista Way
Leander, TX 78641-2505

Adam Zarafshani
625 Norwood Tower, 114 West 7th Street
Austin, TX 78701

Airco Mechanical Ltd.
PO Box 1598
Round Rock, TX 78680-1598

Airgas USA LLC
P.O. 1152
Tulsa, OK 74101-1152

Airgas USA, LLC
11111 N Lamar Blvd
Austin TX 78753-3058

Allied Sales Company
P.O. 6116
Austin, Texas 78762-6116

Angela VanDeWalle
8003 Weldon Springs Court
Austin, Texas 78726-4016

AquaLogic Water Consulting
16238 Highway 620 #F232
Austin TX 78717-5212

Armbrust & Brown, PLLC
100 Congress Avenue #1300
Austin, Texas 78701-2744

Assessment Technologies
40 NE Loop 410, Ste. 607
San Antonio, Texas 78216-5883

Austin CG Construction Services, Inc.
901 S Mopac Expressway, Ste. 410
Austin, Texas 78746-5776

Austin Glass & Mirror, Inc.
6308 Decker Lane
Austin, Texas 78724-5102

Austin Porta Potty Rentals
212 N Blue Ridge Pkwy
Cedar Park, TX 78613-3059

BTY US, LLC
2180 Satellite Boulevard, Ste. 400
Duluth, Georgia 30097-4927

Bates Backhoe, Inc.
P.O. 156
Hutto, Texas 78634-0156

Blu Fish Collaborative Inc.
P.O. Box 40792
Austin, TX 78704-0014

Bordan Ladner Gervais LLP
World Exchange Plaza, 100 Queen Street
Ottawa, Ontario K1P 1B1

Borden Ladner Gervais LLP
Suite 1900, 520 - 3 Avenue SW
Calgary, AB T2P 0R3
E-mail: kbarr@blg.com
E-mail: kawoods@blg.com

Bryan Cave Leighton Paisner LLP
P.O. 503089
St. Louis, Missouri 63150-3089

Byrne Byrne & Company
217 N Jefferson St Suite #450
Chicago, IL 60661-1316

C & C Restoration Services, Inc.
307 E Walnut St.
Hillsboro TX 76645-3332

C Kyle Pugh PC
4015 Main Street, Ste. 100
Dallas, Texas 75226-1231

CNA Insurance
PO Box 74007619
Chicago IL 60674-7619

CT Corporation
P.O. 4349
Carol Stream, Illinois 60197-4349

Chaparral Professional Land Surveying
5725 W Hwy 290, Suite 103
Austin TX 78735-8722

Christina Brinch Clark
# W 122nd Street, Apt 2A
New York, New York 10027

(p)CITY OF AUSTIN   AUSTIN ENERGY
ATTN COLLECTIONS DEPARTMENT
4815 MUELLER BLVD
AUSTIN TX 78723-3573

City of Austin Law Department
Attn: Sara Schaefer
301 W. 2nd St.
P.O. 1088
Austin, TX 78767-1088

Coster Realty Information Inc.
2563 Collection Center Drive
Chicago, Illinois 60693-0025

D & G Tree and Landscaping Services
309 Amanecer Dr
Lockhart TX 78644-2065

D and D Specialty Services, LLC
721 W.Briarwood Dr.
Brenham, TX 77833-6543

Days End Lawn Sprinkler
P.O. Box 5893
Austin, TX 78763-5893

Doucet & Associates, Inc.
7401 B Highway 71 West, Suite 160
Austin, TX 78735-8201

EFI Global, Inc.
500 Sandau Road, Ste. 300
San Antonio, Texas 78216-3636

Elm Developments Corp.
1931 Highway 7
Concord ON L4K 1V5

Ferguson Enterprises LLC
P.O. 847411
Dallas, Texas 75284-7411

(p)FIRST INSURANCE FUNDING
450 SKOKIE BLVD SUITE 1000
NORTHBROOK IL 60062-7917

Foley & Lardner LLP
P.O. 78470
Milwaukee, Wisconsin 53278-8470

GSC Architects
3100 Alvin DeVane Boulevard, Building A,
Austin, Texas 78741-7406

GSC Architects
3100 Alvin Devane Boulevard, Suite 200-b
Austin, TX 78741-7406

GeoSolutions
7011 West Bee Cave Rd.
Austin TX 78746-5011

Glass.com of Illinois
910 S. Riverside Dr., Ste. 4
Elmhurst, IL 60126-4979

Grass Works Lawn Care
11318 Trails End Rd.
Leander TX 78641-5843

H2MG
8000 I-10 #1002
San Antonio, Texas 78230-4449

HMG & Associates, Inc.
12515 Research Blvd., Te 7-140
Austin, TX 78759-2228

Hilco Real Estate Apraisal, LLC
5 Revere Drive, Ste. 300
Northbrook, Illinois 60062-8014

Hill Country Electric Supply
P.O. 577
San Antonio, Texas 78292-0577

Hoang Willis
709 Stevenage Drive
Pflugerville, Texas 78660-8062

Inglewood
9242 Headlands Road
Mentor, Ohio 44060-1026

Kilgore Industries, LP
10050 Houston Oaks Drive
Houston, TX 77064-3520

Koetter Fire Protection
16069 Central Commerce Drive
Pflugerville TX 78660-2005

L&W Supply
503 Industrial Boulevard
Austin, Texas 78745-1210

Law Office of Terrence L. Irion
15113 Bat Hawk Circle
Austin, Texas 78738-6862

Lawrence Group
319 N. 4th Street, Ste. 1000
St. Louis, Missouri 63102-1937

MJ Structures, PLLC
3005 S Lamar Blvd #D109 #467
Austin TX 78704-8864

MNP LTD
1500, 640 - 5th Avenue SW
Calgary, Alberta

McCord Engineering, Inc.
916 Southwest Parkway East
College Station, TX 77840-4018


(p)MCMINN LAND SURVEYING COMPANY  CORP
4008 GREENMOUNTIAN LN
AUSTIN TX 78759-7570

Michel Gray & Rogers
824 W 10th Street, Ste. 101
Austin, Texas 78701-2039

Mint Engineering
107 RR 620 South, Ste. 350
Austin, Texas 78734-3980


Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Suite 4000
Dallas TX 75201-6605

Nathan Olson
11308 Wet Season Drive
Austin, Texas 78754-5855

Nuveen Green Capital
19 Old Kings Highway South, Ste. 210
Darien, Connecticut 06820-4532


O&L Development Corp.
1931 Highway 7
Concord, Ontario L4k 1V5

Office of U.S. Trustee
903 San Jacinto Blvd. #230
Austin, TX 78701-2450

Osler, Hoskin & Harcourt LLP
225-6th Avenue SW, Ste. 2700
Calgary, Alberta T2P 1N2


PLC Group
2701 S County Road 1180
Midland, Texas 79706-4032

PRO VIGIL
P.O. 26539
Austin, Texas 78755-0539

Panache Development & Construction, Inc.
P.O. 26539
Austin, Texas 78755-0539


Panache Development and Construction Inc
901 S Mopac Expy Bldg 1 #300
Austin TX 78746-5883

Plan M Advisory Services
3876 Vandorf Sideroad
Stouffville, ON, L4A  4K3

Power Labor Staffing LLC
206 W Main Street
Round Rock, Texas 78664-5811


Pro-Vigil Inc
P.O. BOX 677107
Dallas, TX 75267-7107

Quiddity
3100 Alvin Devane Blvd, Suite 150
Austin Texas 78741-7409

RCLCO Real Estate Consulting
7200 Wisconsin Avenue, Ste. 1110
Bethesda, Maryland 20814-4800


RIC (Austin), LLC
1717 West 6th Street, Suite 250
Austin, TX 78703-4777

RIC (Austin), LLC
c/o Gregory S. Milligan
8911 N. Capital of Texas Highway, Ste. 2
Austin, TX 78759-7247

Ranger Security Agency, LLP
1258 Chad Dr.
Round Rock, TX 78665-2038


ResolveDesigns LLC
120 Saint Richie Lane
Austin, Texas 78737-4612

Richard Rodrigues and Skeith LLP
611 W 15th Street
Austin, TX 78701-1513

Romspen Mortgage LP
c/o Kyle S Hirsch
Bryan Cave Leighton Paisner LLP
2200 Ross Ave #4200W
Dallas TX 75201-2763


Romspen Mortgage Limited Partnership
Two North Central Ave #2100
Phoenix AZ 85004-4533

SCI Engineering Inc
130 Point West Boulevard
St. Charles, Missouri 63301-4408

Safeguard Business Systems Limited
330 Cranston Crescent
Midland, Ontario L4R 4V9

Safeguard Print and Promo
330 Cranston Crescent
Midland, ON  L4R 4V9

Sara Schaefer
301 W 2nd Street
Austin, Texas 78701-4652

Shermco Industries Inc.
2425 East Pioneer Dr.
Irving TX 75061-8919

Snow Environmental Solutions, LLC
1375 Braided Rope Drive
Austin Texas 78727-4630

Spaseco Inc.
9575 W. Higgins Road, Suite 700
Rosemont, IL 60018-4998

Spectrum Business
PO Box 60074
City of Industry, CA 91716-0074

Sprouse Shrader Smith
805 Las Cimas Pkwy, Ste. 350
Austin, Texas 78746-6177

Structures PE LLP
4408 Burnet Road
Austin, Texas 78756-3319

StructuresPE, LLP
4315 Guadalupe St, Ste 301
Austin, TX 78751-3644

Summer Legacy, LLC
108 Wild Basin, Ste. 250
Austin, Texas 78746-3468

(p)SUNSTATE EQUIPMENT CO   LLC
ATTN CREDIT LEGAL
5552 E WASHINGTON
PHOENIX AZ 85034-2134

Texas Air Industries Inc.
1 Chisholm Trail Road, Ste. 400
Round Rock, Texas 78681-5039

Texas Disposal Systems
PO Box 674080
Dallas TX 75267-4080

Texas Gas Service
PO Box 219913
Kansas City, MO 64121-9913

The Bug Master
1912 Smith Rd,
Austin, TX 78721-3547

The Chapman Firm
3410 Far West Boulevard, Ste. 210
Austin, Texas 78731-3273

The Davey Tree Expert Company
P.O. Box 94532
Cleveland OH 44101-4532

The Montgomery Design Consultancy LLC
PO Box 300939
Austin TX 78703-0016

Traffic Impact Group LLC
165 Sabal Palm Drive, Ste. 141
Longwood, Florida 32779-2591

Travis County Tax Office
PO Box 149328
Austin, TX 78714-9328

Travis County c/o Jason A. Starks
PO Box 1748
Austin, Texas 78767-1748

(p)INTSEL STEEL
ATTN LORI DOYLE
11310 WEST LITTLE YORK
HOUSTON TX 77041-4917

United States Trustee – AU12
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450

Vesta Texas, LLC
2901 Via Fortuna Bldg 6, Suite 450
Austin, TX 78746-0007

Victor Saucedo
5501 Night Chinook Drive
Buda, Texas 78610

Ware Malcomb
Accounts Receivable, 10 Edelman
Irvine, CA 92618-4312

Waste Connections Lone Star Inc.
PO Box 17608
Austin, TX 78760-7608

Winstead PC
2728 N. Harwood St., Suite 500
Dallas, TX 75201-1743

Witten LLP
10303 Jasper Avenue
Edmonton, Alberta T5J 3N6

Wylie Engineering
1 Greenway Plaza, Suite 1100
Houston TX 77046-0104

Yareht Abigial Ruvalcaba Hernandez
6531 County Road 110, Apt 132
Round Rock, Texas 78665-1628

Eric Terry                    Eric Terry Law,
PLLC
3511 Broadway
San Antonio, TX 78209-6513

Jacob J King
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St.
Dallas, TX 75201-3302


Jay Ong
Munsch Hardt Kopf & Harr, P.C.
1717 West 6th St #250
Austin, TX 78703-4777

Jonathan Petree
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street #4000
Dallas, TX 75201-6605

Thomas D. Berghman
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St. #3800
Dallas, TX 75201-6659


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


City of Austin
PO Box 2267
Austin TX 78783-2267

First Insurance Funding
450 Skokle Blvd., Ste 1000
Northbrook, IL 60062-7917

McMinn Land Surveying Company
4008 Greenmountain Lane
Austin, TX 78759


Sunstate Equipment Co.
5552 East Washington Street
Phoenix, Arizona 85072

Triple S Steel
2042 West Thompson Place
San Antonio, Texas 78226


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Safeguard Business Systems Limited
Lockbox T57624C
PO Box 57624 #A

End of Label Matrix
Mailable recipients    125
Bypassed recipients      1
Total                  126